v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 6, 2012.

Decided July 12, 2012.

Janice L. Martino Longer, Lancaster, for petitioner.

Mary P. Patterson, Senior Counsel, Harrisburg, for respondent.

Anne L. Cooper, Lancaster, for intervenor Lancaster County Children and Youth Social Service Agency.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

G.V. petitions this Court for review of the Department of Public Welfare (DPW),

Bureau of Hearings and Appeals' (BHA) December 29, 2010 order adopting the Administrative Law Judge's (ALJ) recommendation denying G.V.'s appeal. The issues before this Court are: (1) whether there was substantial evidence to support BHA sustaining the report of child abuse; (2) whether BHA erred in its interpretation of "sexual abuse or exploitation," as defined by Section 6303(a) of the Child Protective Services Law (Law),[1] 23 Pa.C.S. § 6303(a); and, (3) whether BHA erred by applying a "substantial evidence" standard of proof.[2] We vacate and remand.

■ On September 9, 2009, Lancaster County Children and Youth Services (CYS) received a referral alleging that G.V. was sexually abusing his 16–year–old great niece, C.S., of whom G.V. and his wife, T.V., had custody. CYS conducted an investigation and, on November 5, 2009, it filed an indicated report against G.V. as a perpetrator of sexual child abuse against C.S. CYS filed the report with the Child-Line & Abuse Registry (ChildLine Registry)[3] on the same day. By notice mailed November 16, 2009, G.V. was informed that he was listed on the ChildLine Registry as a perpetrator of child abuse. On December 23, 2009, G.V. requested a hear-

ing because he disagreed with the indicated report. A hearing was held on June 2, 2010 before the ALJ, at which several witnesses, including C.S. and G.V., testified. On December 17, 2010, the ALJ issued a recommendation that BHA deny G.V.'s child abuse expungement appeal. By order issued December 29, 2010, BHA adopted the ALJ's recommendation in its entirety.[4] On January 26, 2011, G.V. appealed to this Court.[5] On June 6, 2012, the standard of proof issue was argued before this Court *en banc.*

G.V. seeks expungement of the indicated report designating him a perpetrator of child abuse. "Child abuse" is defined by the Law, *inter alia,* as "[a]n act ... by a perpetrator which causes ... sexual abuse or sexual exploitation of a child under 18 years of age." 23 Pa.C.S. § 6303(b)(1)(ii). "Sexual abuse or exploitation" is defined in DPW's Regulations as, *inter alia:*

(i) Any of the following if committed on a child by a perpetrator:

(A) The employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another person to engage in sexually explicit conduct.

---

1. 23 Pa.C.S. §§ 6301–6386.

2. This Court has stated that the " 'substantial evidence' in child abuse expungement cases ... is synonymous with the 'preponderance of the evidence' standard." *S.T. v. Dep't of Pub. Welfare, Lackawanna Cnty. Office, Children, Youth & Family Servs.,* 681 A.2d 853, 857 n. 4 (Pa.Cmwlth.1996).

3. ChildLine is defined as "[a]n organizational unit of [DPW] which operates a State-wide toll-free system for receiving reports of suspected child abuse established under [S]ection 6332 of the [Law] (relating to establishment of Statewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file...." 55 Pa.Code § 3490.4.

4. On January 13, 2011, G.V. sought reconsideration of BHA's order. By order issued August 22, 2011, DPW denied reconsideration. Pursuant to Pa.R.A.P. 1512(a)(1) and 1701(b)(3), and Section 35.241(e) of the General Rules of Administrative Practice and Procedure, 1 Pa.Code § 35.241(e), once the 30–day appeal period expired, DPW no longer had jurisdiction to decide reconsideration.

5. "This Court's review of an expungement request is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence." *C.S. v. Dep't of Pub. Welfare,* 972 A.2d 1254, 1258 n. 2 (Pa.Cmwlth.2009) (quotation marks omitted).

. . . .

(C) Any of the following offenses as defined by the crimes code:

. . . .

(6) Indecent assault as defined by [S]ection 3126 [of the Pennsylvania's Crimes Code (Crimes Code) ] (relating to indecent assault).

. . . .

(D) Exploitation which includes any of the following:

(1) Looking at the sexual or other intimate parts of a child for the purpose of arousing or gratifying sexual desire in either person.

55 Pa.Code § 3490.4. Section 3126(a) of the Crimes Code states, in relevant part:

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person . . . for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's consent; [or]

. . . .

(4) the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring[.]

18 Pa.C.S. § 3126(a). "Indecent contact" is defined by Section 3101 of the Crimes Code as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S. § 3101.

■ An indicated report of child abuse is defined as a report issued by DPW if it "determines that substantial evidence of the alleged abuse exists based on any of the following: (1)[a]vailable medical evidence[;] (2)[t]he child protective service investigation[; or,] (3)[a]n admission of the

acts of abuse by the perpetrator." 23 Pa.C.S. § 6303; 55 Pa.Code § 3490.4. Substantial evidence is defined in the Law as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303(a). "[CYS] has the burden of establishing by substantial evidence that an indicated report of child abuse is accurate. If CYS fails to sustain that burden, a request for expungement will be granted." *Bucks Cnty. Children & Youth Soc. Servs. Agency v. Dep't of Pub. Welfare,* 808 A.2d 990, 993 (Pa.Cmwlth.2002).

G.V. argues that the evidence relied upon by the ALJ to find that the indicated report was properly maintained does not, by itself, constitute substantial evidence to support the finding. G.V. asserts that C.S.'s testimony was inconsistent and did not outweigh the evidence G.V. submitted. G.V. also argues that BHA committed an error of law in its interpretation of "sexual abuse or exploitation," as defined by Section 6303(a) of the Law. We disagree.

The testimony before the ALJ revealed that, between 2003 and 2009, C.S. spent time living with her mother (T.D.), her father, and her mother's aunt (T.V.) and T.V.'s husband (G.V.), with the majority of her time spent living with G.V. and T.V. G.V. regularly gave backrubs to C.S. and his daughters, M.H. and B.V. M.H. moved out of their home in 2004. In September 2007, C.S. was placed permanently with G.V. and T.V. by court order. As of 2009, when C.S. was 16 years old, G.V. and T.V.'s household consisted of G.V., T.V., C.S. and B.V., but B.V. frequently spent evenings and nights with her boyfriend rather than at her parents' home.

From February 2009 to May 2009, T.V. and T.D. fought over T.D.'s having to pay child support for raising C.S. During that

time, C.S. did not have visitation with her mother. C.S. made the following allegations against G.V.: "In April and May 2009, after T.V. went to bed upstairs, [G.V.] attempted to touch [C.S.'s] crotch three (3) times while giving her a backrub in the living room." Reproduced Record (R.R.) at 26a. During the same time period, and after T.V. went upstairs to bed, G.V. "twice pulled down [C.S.'s] shorts and underwear to massage her buttocks while giving her backrubs in the living room." R.R. at 26a. C.S. felt uncomfortable when G.V. was massaging her buttocks but she did not tell G.V. to stop. Early in the summer of 2009, C.S. fell asleep in B.V.'s bed after receiving a backrub and she awoke to G.V. fondling her breasts. After this "incident, C.S. declined [G.V.'s] subsequent offers for backrubs." R.R. at 26a. During each incident, G.V. was clothed. G.V. acknowledged that T.V. sometimes went to bed and fell asleep before he joined her. C.S. also testified that when she would ask G.V. for a cigarette, every now and then G.V. would respond: "If I am not having sex with you, then I am not supporting you." R.R. at 75a. Finally, C.S. testified that G.V. told her on multiple occasions that she "had a cute butt." R.R. at 76a. T.V. testified that immediately before C.S. levied the allegations, T.V. had punished C.S. and C.S. was facing a loss of privileges. T.V. also testified that, in September 2009, after CYS issued the indicated report against G.V., custody of C.S. reverted to T.D., thereby ending T.D.'s obligation to pay T.V. and G.V. child support.

CYS Investigator, Karen Gerber, testified that while she did not interview C.S., she observed the forensic interview where C.S. asserted that G.V. made inappropriate sexual comments towards her, twice pulled down her shorts and rubbed her bare buttocks, and fondled her breasts while she was sleeping in her cousin's bed. Ms. Gerber stated that when she later visited C.S., C.S. reported that there was nothing that she wanted to add or change about her original disclosure.

The ALJ found C.S.'s testimony credible. He also deemed credible the testimony of Ms. Gerber, and M.H. The ALJ found T.W.[6] and T.V. generally credible. The ALJ did not credit G.V.'s testimony that he did not touch C.S.'s buttocks or breasts, and that he did not attempt to touch her between her legs. In finding G.V.'s testimony not credible, the ALJ explained that G.V. was "proficient in hiding his activities from family members and neighbor T.W.," citing the fact that G.V. hid that he smoked "marijuana at his home 2–3 times per month for many years and only stopped in the last few years. This demonstrates that [G.V.] acted clandestinely at home unbeknownst to his daughter, spouse, and neighbor." R.R. at 34a. The ALJ further cited inconsistencies in G.V.'s testimony, particularly his testimony that he was never alone with C.S. and his admission that he slept downstairs after his wife went to bed. The ALJ concluded that C.S.'s credible testimony supported the finding that G.V. was a perpetrator of child abuse as defined by Section 3490.4 of DPW's Regulations, 55 Pa.Code § 3490.4, and that the indicated report was being maintained consistent with the Law and DPW's Regulations. Accordingly, the

---

6. T.W. is G.V.'s long-time friend and neighbor. He testified that he hosted G.V.'s family at his cabin on the Fourth of July and Labor Day weekends in 2009. He was surprised to learn of C.S.'s disclosures in September of 2009, because C.S. appeared to enjoy her weekend in the mountains just a few days before. He testified that G.V. treated C.S. as his daughter, and T.W. never observed G.V. act inappropriately with C.S. or make sexual comments to C.S. He never observed G.V. smoke marijuana.

ALJ recommended denying G.V.'s appeal. BHA agreed, and adopted the ALJ's recommendation and opinion as its own.

■ It is well settled that credibility determinations in expungement proceedings are made by the fact finder and are not subject to appellate review. *S.T. v. Dep't of Pub. Welfare, Lackawanna Cnty. Office, Children, Youth & Family Servs.,* 681 A.2d 853 (Pa.Cmwlth.1996). This Court has held that:

> in determining whether a finding of fact is supported by substantial evidence, the Court must give the party in whose favor the decision was rendered the benefit of all reasonable and logical inferences that may be drawn from the evidence of record; the weight and credibility to be accorded to the evidence is solely within the province of the attorney examiner as fact finder.

*Id.*, 681 A.2d at 856. The consistent testimony of a victim of child abuse can support the findings of fact upon which a determination that an indicated report was accurate can be made. *D.T. v. Dep't of Pub. Welfare,* 873 A.2d 850 (Pa.Cmwlth. 2005); *K.J. v. Dep't of Pub. Welfare,* 767 A.2d 609 (Pa.Cmwlth.2001).

■ Here, the ALJ was faced with a "he said/she said" situation and credited the testimony of C.S. and Ms. Gerber. The ALJ relied on the credited testimony to conclude that sexual abuse or exploitation occurred because G.V. engaged in activity that was consistent with indecent assault under Sections 3101(a) and 3126(a) of the Crimes Code. The ALJ held that rubbing and looking at C.S.'s buttocks, fondling her breasts, and attempting to touch her genitals, was motivated for G.V.'s and/or C.S.'s sexual gratification, because there were no health reasons offered for the contact and because of where G.V. touched or attempted to touch C.S. Taking the testimony and the reasonable inferences drawn therefrom in favor of the prevailing party, there is substantial evidence to support the ALJ's findings.

■■ An indicated child abuse report can be based exclusively on a child protective service investigation. *K.J.* The fact that G.V. provided other explanations for his contact with C.S. is of no moment where the ALJ did not credit those explanations. Finally, although there may have been no "direct" evidence that G.V. or C.S. experienced sexual gratification from the conduct or that such conduct was for the purpose of arousing sexual gratification, such finding is reasonably inferable from the evidence cited by the ALJ. Accordingly, there was substantial evidence to sustain the indicated report of child abuse, and BHA did not err in its interpretation of "sexual abuse or exploitation."

■■ G.V. next argues that basing an indicated report on substantial evidence, as was done by the ALJ and as set forth in the Law "does not adequately protect the rights of the accused perpetrator given the nature of the proceedings and the adverse consequences which flow from a finding of abuse and registration in the statewide Child[Line] Registry." G.V. Br. at 21. Citing *J.S. v. Department of Public Welfare,* 528 Pa. 243, 596 A.2d 1114 (1991), G.V. maintains that to satisfy federal and state due process requirements, the standard of proof in expungement proceedings must be one of clear and convincing evidence. We agree, in part. **It is undisputed that the General Assembly has pronounced that substantial evidence must support an indicated report.** 23 Pa.C.S. § 6303; 55 Pa.Code § 3490.4.[7] **However, there is no similar legislative mandate**

---

7. Section 6303(a) of the Law specifically defines:

A child abuse report made pursuant to this chapter if an investigation by the county

regarding the standard of proof to be met for maintaining the indicated report summary on the ChildLine Registry.[8]

Cases involving a significant loss of freedom or livelihood require clear and convincing evidence. *In the Matter of Lawrence D. Greenberg*, 561 Pa. 154, 749 A.2d 434 (2000) (professional license reinstatement proceedings); *In re S.B.*, 777 A.2d 454 (Pa.Super.2000) (involuntary commitment proceedings). Other child-related civil proceedings likewise require the use of a clear and convincing standard. *See In re: B.,N.M.*, 856 A.2d 847 (Pa.Super.2004) and *In re In the Interest of B.L.L.*, 787 A.2d 1007 (Pa.Super.2001) (parental rights termination/dependency proceedings). G.V. argues, and we agree, in *J.S.*, the Pennsylvania Supreme Court acknowledged that the standard of proof in child abuse expungement proceedings should be revisited. Specifically, the *J.S.* Court noted:

> Although [J.S.] did not question the standard of proof required by [DPW] in

> agency or the [DPW] *determines that substantial evidence of the alleged abuse exists* based on any of the following:
> (1) Available medical evidence.
> (2) The child protective service investigation.
> (3) An admission of the acts of abuse by the perpetrator.
>
> (Emphasis added). Section 3490.4 of DPW's Regulations likewise defines "indicated report" as:
>> A child abuse report made under the [Law] and this chapter if an investigation by the county agency or [DPW] *determines that substantial evidence of the alleged abuse exists* based on any of the following:
>> (i) Available medical evidence.
>> (ii) The child protective service investigation.
>> (iii) *An admission of the acts of abuse by the perpetrator.*
>
> (Emphasis added).

8. If the request is denied, the perpetrator is notified that he/she may appeal the Secre-

order to maintain the indicated report, this Court is quite troubled by the use of any standard less than requiring clear and convincing evidence. Even though the statute requires substantial evidence, it is quite possible that such a standard does not adequately protect the rights of the accused given the nature of these proceedings. See *Santosky v. Kramer*, 455 U.S. 745 [102 S.Ct. 1388, 71 L.Ed.2d 599] (1982). However, since the issue has not been raised, we will defer consideration until such time as it is properly briefed and argued.

*J.S.*, 528 Pa. at 248 n. 2, 596 A.2d at 1116 n. 2. Because the instant case presents the issue, we will address the standard that must be met in order for the indicated report summary to be maintained on the ChildLine Registry.

It is important to note that the indicated report impacts upon three competing interests: (1) the child, (2) the accused perpetrator, and (3) limited government officials, law enforcement and individuals.[9]

tary's decision, and a hearing on the merits is held "to determine whether the summary of the indicated report on the [ChildLine Registry] should be ... expunged." 23 Pa.C.S. § 6341(c); *see also* 55 Pa.Code § 3490.106a. "In the absence of an applicable statutory standard of review, the common law standard of review applies." *Dearry v. Aetna Life & Cas. Ins. Co.*, 415 Pa.Super. 634, 610 A.2d 469, 473 (1992).

9. In addition, generally confidential reports of child abuse, including report summaries, whether or not they are disclosed on ChildLine Registry, may be disclosed, *inter alia*, to DPW officials, a physician who suspects child abuse is occurring, courts of competent jurisdiction, a standing committee of the General Assembly, the Attorney General, law enforcement officials, the district attorney, and designated county agencies and officials. 23 Pa. C.S. §§ 6332(a) (relating to CYS use of the statewide toll-free hotline to determine the existence of prior founded or indicated re-

As stated above, the General Assembly has clearly stated that the lowest evidentiary standard is to be applied where the safety and well-being of the child is in question. Accordingly, any doubt of harm will be resolved in favor of providing protection to the child. However, completely absent from the statute is the standard of proof required to maintain designated information from the indicated report on the ChildLine Registry or to disclose it to limited outside third parties.

Article I, Section 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting ... reputation...." Pa. Const. art. I, § 1. G.V. asserts that, because reputation is a protected fundamental interest under Article I, Section 1 of the Pennsylvania Constitution, the loss of reputation and the stigma associated with being named a child abuser demands a higher standard of proof in order to satisfy due process. We agree.

In *R. v. Department of Public Welfare*, 535 Pa. 440, 636 A.2d 142 (1994), our Supreme Court adopted the United States Supreme Court's methodology for reviewing claims of a violation of a citizen's right to their reputation under due process; specifically, one who is seeking to challenge expungement procedures under the Law as violating due process under the Pennsylvania Constitution. The Pennsylvania Supreme Court set forth the following factors to be considered:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of

such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements will entail.

*R.*, 535 Pa. at 449, 636 A.2d at 146 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). We will address each factor in turn.

### 1. The Affected Private Interests

In *A.Y. v. Department of Public Welfare, Allegheny County Children and Youth Services*, 537 Pa. 116, 641 A.2d 1148 (1994), the Supreme Court stated:

Although less process is due in an administrative proceeding than where criminal charges have been brought, an administrative adjudication of suspected child abuse is of the most serious nature. Therefore, this society, which was founded upon, *inter alia*, its citizens' 'inherent and indefeasible rights ... of acquiring, possessing and protecting property and *reputation*,' cannot blithely surrender those rights in the name of prosecutorial convenience.

*Id.*, 537 Pa. at 124, 641 A.2d at 1152 (footnote omitted). Since the Supreme Court has already recognized there exists a constitutionally-protected interest in one's reputation, it is necessary for us to determine whether a higher standard of proof should be required in order for G.V.'s name to be maintained on the ChildLine Registry.

The Law mandates that when a person seeks employment that would bring him/her in direct contact with children, or with

ports in the ChildLine Registry), 6333 (relating to DPW's continuous availability to disclose prior reports of child abuse on the ChildLine Registry), 6339 (relating to confidentiality of reports), 6340(a) (relating to the release of information in confidential reports); 55 Pa.Code § 3490.36.

a significant likelihood of regular contact with children, or when a person resides in a family day-care home, that person must provide a certification, obtained within the preceding year from DPW, of whether he/she was named in the ChildLine Registry as a perpetrator of an indicated report of child abuse. 23 Pa.C.S. §§ 6344(a), (b)(2),[10] 6344.1(a),(b), 6344.2. Similarly, school districts and civic organizations regularly require all adults to obtain a certification that they are not on the ChildLine Registry before they can participate in any activities involving children. Prospective adoptive or foster parents, self-employed family day-care providers and operators of childcare services must also submit certification obtained within the previous year from the ChildLine Registry. 23 Pa.C.S. § 6344(d)-(f).[11] Thus, in addition to reputation, disclosure of an indicated report impacts upon one's livelihood and other freedoms.

Section 6336 of the Law governs information on the ChildLine Registry as follows:

10. Section 6344(b) states, in relevant part:
    (b) **Information submitted by prospective employees.**—Administrators of child-care services shall require applicants to submit with their applications the following information obtained within the preceding one-year period: . . . .
    (2) A certification from the department as to whether the applicant is named in the [ChildLine Registry] as the perpetrator of a founded report of child abuse, indicated report of child abuse, founded report for school employee or indicated report for school employee. . . .

11. Section 6344(d)-(f) states, in relevant part:
    (d) **Prospective adoptive or foster parents.**—With regard to prospective adoptive or prospective foster parents, the following shall apply:
    (1) . . . an agency . . . shall require prospective adoptive parents and any individual over the age of 18 years residing in the home to submit the information set forth in subsection (b). . . .

(a) **Information authorized.**—The [ChildLine Registry] shall include and shall be limited to the following information:

(1) The names, Social Security numbers, age and sex of the subjects of the reports.

(2) The date or dates and the nature and extent of the alleged instances of suspected child abuse.

(3) The home addresses of the subjects of the report.

(4) The county in which the suspected abuse occurred.

(5) Family composition.

(6) The name and relationship to the abused child of other persons named in the report.

(7) Factors contributing to the abuse.

(8) The source of the report.

(9) Services planned or provided.

(10) Whether the report is a founded report or an indicated report.[12]

(2) . . . [the] agency shall require prospective foster parents and any individual over the age of 18 years residing in the home to submit the information set forth in subsection (b). . . .
(8) [DPW] shall require . . . . (iii) Child abuse clearance generated by the process outlined in this section. . . .
(e) **Self-employed family day-care providers.**—Self-employed family day-care . . . shall submit with their registration application the information set forth under subsection (b). . . .
(f) **Submissions by operators of child-care services**—[DPW] shall require persons seeking to operate child-care services to submit the information set forth in subsection (b). . . .

12. A "founded report" is

    [a] child abuse report made . . . if there has been any judicial adjudication based on a finding that a child who is a subject of the report has been abused, including the entry

(11) Information obtained by [DPW] in relation to a perpetrator's or school employee's request to release, amend or expunge information retained by [DPW] or the county agency.

(12) The progress of any legal proceedings brought on the basis of the report of suspected child abuse.

(13) Whether a criminal investigation has been undertaken and the result of the investigation and of any criminal prosecution.

No information other than that permitted in this subsection shall be retained in the [ChildLine Registry].

**(b) Type of information released.**— Except as provided in sections 6334 (relating to disposition of complaints received), 6335 (relating to information in pending complaint and unfounded report files), 6340 (relating to release of information in confidential reports) and 6342 (relating to studies of data in records), persons receiving information from the [ChildLine Registry] or pending complaint file may be informed only as to:

(1) Whether the report is a founded or indicated abuse or is under investigation.

(2) The number of such reports.

(3) The nature and extent of the alleged or actual instances of suspected child abuse.

(4) The county in which the reports are investigated.

(5) Any other information available which would further the purposes of this chapter.

**(c) Limitation on release of information.**—Except as provided in sections 6334, 6335, 6340 and 6342, no information shall be released from the [ChildLine Registry] or pending complaint file unless pursuant to section 6332 (relating to establishment of Statewide toll-free telephone number) and unless [DPW] has positively identified the representative of the county agency requesting the information and the [DPW] has inquired into and is satisfied that the representative has a legitimate need, within the scope of official duties and the provisions of section 6332, to obtain the information. Information in the [ChildLine Registry] or pending complaint file shall not be released for any purpose or to any individual not specified in section 6340.

23 Pa.C.S. § 6336.

Citing Sections 6340(a) (specifying to whom and under what circumstances confidential reports shall be made available) [13]

of a plea of guilty or nolo contendere or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse. 23 Pa.C.S. § 6303(a). Even the report titles, "founded" versus "indicated," demonstrate that less proof is needed to support an indicated report, yet the information contained in an indicated report is disclosed on the ChildLine Registry in the same manner as a founded report, without any additional due process.

13. Section 6340(a) of the Law provides, in pertinent part:

General rule.—Reports specified in section 6339 (relating to confidentiality of reports) shall only be made available to: (1) An

authorized official of a county agency, of a Federal agency ... or of an agency of another state that performs protective services.... (2) A physician examining or treating a child or the director ... of any hospital or other medical institution where a child is being treated.... (3) A guardian ad litem or court designated advocate for the child. (4) An authorized official or agent of [DPW].... (5) A court of competent jurisdiction.... (6) A standing committee of the General Assembly.... (7) The Attorney General. (8) Federal auditors.... (9) Law enforcement officials of any jurisdiction.... (10) The district attorney or his designee or other law enforcement official.... (11) Designated county

and 6344 (relating to employment in child-care services, prospective foster and adoptive parents, and self-employed family day-care providers) of the Law, the Supreme Court, in *R.,* stated:

> R. is not being stigmatized in the eyes of the general public.... [H]is identity is disclosed to a small number of persons in a very narrow range of situations with the understanding that it will not be revealed to any unauthorized individuals. Therefore, any adverse effects on his reputation are very limited.

*Id.,* 535 Pa. at 456, 636 A.2d at 150. However, in *A.Y.,* the Supreme Court referred to the ChildLine Registry as "a 'black list'" on which a citizen's name would be registered "for all time" and that "because of the nature of these charges, the existence of a record involving such charges cannot be underestimated." *A.Y.,* 537 Pa. at 124–25, 641 A.2d at 1152. Additionally, the *A.Y.* Court noted that the accused perpetrator's name was placed on the ChildLine Registry without there ever being an adjudication on the merits of the allegations. *A.Y.* Thus, although there may be a limited disclosure of the names on the ChildLine Registry, our Supreme Court recognizes that there is a stigma attached to the mere existence of the record on the ChildLine Registry that implicates adverse effects on an alleged child abuse perpetrator's reputation which cannot be underestimated.

Even though the statute seeks to minimize disclosure of the ChildLine Registry information, its actual use by the statutorily-designated government officials, law enforcement and other entities and individuals in responding to the inquiries of employers, school districts, churches, boy and girl scouts, and other organizations creates the very real potential and probability for disclosure to groups and individuals not specifically authorized to receive the information. Accordingly, the potential loss of reputation and stigma associated with being named a child abuser on the ChildLine Registry demands a higher standard of proof.

### 2. The Risk of Erroneous Deprivation of Such Interest

Next, we consider the risk of an erroneous deprivation of G.V.'s interest through the use of the lower standard, rather than the clear and convincing evidence standard, and the probable value, if any, of using the higher standard of proof. *See R.* In *Commonwealth v. Maldonado,* 576 Pa. 101, 838 A.2d 710 (2003), the Supreme Court described the function of a standard of proof as follows:

> Briefly, the function of a standard of proof is to instruct the factfinder as to the level of confidence that society believes he should have in the correctness of his conclusion; furthermore, different standards of proof reflect differences in how society believes the risk of error should be distributed as between the litigants. Thus, the most stringent standard-beyond a reasonable doubt-is applicable in criminal trials due to the gravity of the private interests affected; these interests lead to a societal judgment that, given the severe loss that occurs when an individual is erroneously convicted of a crime, the public should bear

officials.... (12) A mandated reporter of suspected child abuse.... (13) Persons required to make reports under Subchapter C.1 (relating to students in public and private schools).... (14) A prospective adoptive parent.... (15) Appropriate officials of another county or state regarding an investigation related to child abuse.... (16) Members of citizen review panels convened pursuant to section 6343.1 (relating to citizen review panels).... (17) A member of a child fatality or near fatality review team under section 6365(d).
(Footnotes omitted).

virtually the entire risk of error. The preponderance-of-the-evidence standard, by contrast, reflects a belief that the two sides should share the risk equally; for this reason, it is applicable in a civil dispute over money damages, where the parties may share an intense interest in the outcome, but the public's interest in the result is minimal. The clear and convincing standard falls between those two end-points of the spectrum; it is typically defined as follows:

The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.

. . . .

This Court has mandated an intermediate standard of proof-clear and convincing evidence-*when the individual interests at stake in a state proceeding are both particularly important and more substantial than mere loss of money. Notwithstanding the state's civil labels and good intentions, the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with a significant deprivation of liberty or stigma.*

*Maldonado,* 576 Pa. at 109–10, 838 A.2d at 715 (citations and quotation marks omitted) (emphasis added).

The consistent use of the clear and convincing evidence standard in situations where the individual interests at stake are more substantial than mere loss of money, even where the state has good intentions for taking the action, supports G.V.'s position. Indeed, there are numerous civil proceedings where, even though the interest at stake is merely financial, Pennsylvania courts apply the intermediate burden

of proof, rather than the lesser standard of proof. *See Lanning v. West,* 803 A.2d 753 (Pa.Super.2002) (clear and convincing evidence required to prove an *inter vivos* gift); *In re Estate of Margaret C. Agostini, Deceased,* 311 Pa.Super. 233, 457 A.2d 861 (1983) (clear and convincing standard applied to determine lack of testamentary capacity or undue influence). ·CYS cites to administrative law matters, particularly student and professional discipline cases, which apply the substantial evidence standard to support its position. However, while expungement proceedings are administrative hearings, they are unlike most administrative matters because of the consequences associated with a detrimental finding.

### 3. *The Government's Interest*

The third factor is the governmental interests, which the Law expressly details in Section 6302 of the Law, in pertinent part:

(a) **Findings.**—Abused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment.

(b) **Purpose.**—It is the purpose of this chapter to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained. It is also

the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk. 23 Pa.C.S. § 6302. In pursuit of this governmental interest, DPW requires substantial evidence to determine whether a name is being correctly maintained on the ChildLine Registry.

■■■ The issue here is whether the pursuit of this interest by requiring substantial evidence outweighs the risk of an erroneous deprivation of G.V.'s inherent reputational and livelihood interests and personal freedoms. CYS argues that, having to prove these matters by clear and convincing evidence, "would virtually ensure that all matters which do not result in criminal prosecution would not pass muster in the administrative context." CYS Supp. Br. at 5–6. We do not agree. First, the clear and convincing evidence standard is less burdensome than the beyond a reasonable doubt standard. Second, a lesser burden of proof does not offer adequate protection against a potential erroneous deprivation of an individual's inherent rights and freedoms. **Accordingly, as we are statutorily constrained to protect the child from injury or impairment, we hold that substantial evidence must support a determination of whether child abuse has occurred, but there must be clear and convincing evidence of child abuse to maintain statutorily-designated information from an indicated report on the ChildLine Registry.[14]**

This holding is in conformity with DPW's current procedures. When a complaint of child abuse is made either directly to CYS or the ChildLine hotline, the matter is listed in the pending complaint file maintained by DPW. 23 Pa.C.S. §§ 6331(1), 6334(a), (c), 6335; 55 Pa.Code §§ 3490.31, 3490.32, 3490.33(1), 3490.34(a), (b). CYS then investigates the complaint. 23 Pa.C.S. §§ 6334, 6337, 6338; 55 Pa. Code § 3490.55. If there is substantial evidence to support the complaint, CYS creates an indicated report of child abuse. 23 Pa.C.S. § 6303(a); 55 Pa.Code § 3490.4. CYS then notifies the ChildLine Registry. 23 Pa.C.S. § 6338(a); 55 Pa.Code § 3490.67. At this point, the matter is expunged from the pending complaint file and designated information from the indicated report is entered on the ChildLine Registry. 23 Pa.C.S. § 6338(a); 55 Pa. Code § 3490.35. The perpetrator of the abuse is notified of the report and his/her right, within 45 days, to seek expungement

14. Although this Court feels strongly that disclosure of an indicated report summary of child abuse on the ChildLine Registry or to third parties should take place *only after* a hearing at which time the clear and convincing evidence standard is applied, in Section 23 Pa.C.S. § 6338(a) of the Law, the General Assembly has mandated otherwise. The law requires publication of the indicated report summary on the ChildLine Registry upon the determination that child abuse has occurred. "A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government." *Sweeney v. Tucker,* 473 Pa. 493, 507–08, 375 A.2d 698, 705 (1977). Accordingly, "[t]he separation of powers doctrine provides that no branch of government should exercise the functions exclusively committed to another branch." *Harrisburg Sch. Dist. v. Hickok,* 762 A.2d 398, 411–12 (Pa. Cmwlth.2000). Because only the General Assembly has the authority to make and amend the Law, and we can only interpret it, we are constrained from holding that a hearing must take place, and clear and convincing evidence produced *before* an indicated report is placed on the ChildLine Registry or is otherwise disclosed to third parties.

of the report on grounds that it is inaccurate or is not being maintained in a manner consistent with the Law. 23 Pa.C.S. §§ 6338(a), 6341(a); 55 Pa.Code §§ 3490.40, 3490.45, 3490.105a(a).

DPW is authorized to order amendment or expungement of the records "to make them accurate or consistent with the requirements of [the Law]." 23 Pa.C.S. § 6341(e). If a perpetrator makes a written request to expunge an indicated report, DPW's Secretary has 30 days in which to grant or deny the request. 23 Pa.C.S. § 6341(a); 55 Pa.Code §§ 3490.105a(a), (b). If the request is denied, the perpetrator is notified that he/she may appeal the Secretary's decision, and a hearing on the merits is held "to determine whether the summary of the indicated report on the [ChildLine Registry] should be ... expunged." 23 Pa.C.S. § 6341(c); *see also* 55 Pa.Code § 3490.106a. During the entire appeal period, designated information from the indicated report remains disclosed on the ChildLine Registry. 55 Pa.Code §§ 3490.33(2)(i), 3490.35. If DPW determines that an indicated report shall be expunged, the Secretary shall notify the ChildLine Registry. 55 Pa.Code § 3490.107. The ChildLine Registry shall then notify CYS and the perpetrator. 23 Pa.C.S. § 6341(f); 55 Pa.Code § 3490.40(b).

If an indicated report is not otherwise expunged, in cases where the perpetrator's Social Security number and date of birth *are not known,* DPW must expunge indicated reports when the child is 23 years old. 23 Pa.C.S. § 6338(b); 55 Pa.Code § 3490.39(a). If an indicated report is not otherwise expunged, in cases where the perpetrator's Social Security number and date of birth *are known,* the following information is indefinitely maintained in a subfile in the ChildLine Registry:

(1) The name, Social Security Number, date of birth and sex of the perpetrator.

(2) The date of birth and sex of the child.

(3) The dates and the nature and extent of the child abuse.

(4) The county in which the child abuse occurred.

(5) The relationship of the perpetrator to the child.

(6) Whether the report was a founded or indicated report.

(7) The results of any criminal prosecution.

55 Pa.Code § 3490.39(b); *see also* 23 Pa. C.S. § 6338(c); 55 Pa.Code §§ 3490.33(2)(ii), 3490.39(c), 3490.40(a)(6).

It is clear that the Law and DPW's Regulations require DPW to maintain pending complaints and unfounded reports in a place other than the ChildLine Registry. Because only designated information from an indicated report is disclosed on the ChildLine Registry, complete indicated reports are also maintained outside the ChildLine Registry. *See* 23 Pa.C.S. §§ 6336, 6341(c). As with pending complaints and unfounded reports, indicated reports that are supported by substantial evidence but fail to meet the clear and convincing evidence standard must be maintained by DPW in separate files without disclosure on the ChildLine Registry. Access to these reports would be permitted in the same manner as pending complaints and unfounded reports.[15]

---

15. Unfounded reports awaiting expungement are maintained in a file by DPW for one year, after which DPW has up to 120 days to expunge them. 23 Pa.C.S. §§ 6331(3), 6335(a), 6337(a), (c), 6341(f). Section 6335(b) of the Law, 23 Pa.C.S. § 6335(b), provides:

Except as provided in sections 6332[, 23 Pa.C.S. § 6332] (relating to establishment

The delineation of two distinct standards of proof depending on the use of the indicated report will serve to protect children in accordance with the Law's purpose, and to protect an alleged perpetrator's reputation where evidence of abuse is less than clear and convincing. Accordingly, we vacate the BHA's order denying G.V.'s appeal and remand this matter for a hearing to determine whether there is clear and convincing evidence to maintain disclosure of G.V.'s child abuse on the ChildLine Registry.

## ORDER

AND NOW, this 12th day of July, 2012, the Department of Public Welfare, Bureau of Hearings and Appeals' (BHA) December 29, 2010 order denying G.V.'s appeal is vacated, and the matter is remanded for a hearing to determine whether there is clear and convincing evidence to maintain disclosure of G.V.'s child abuse on the ChildLine Registry.

Jurisdiction relinquished.

## DISSENTING OPINION BY Judge LEADBETTER.

I join in the well considered dissenting opinion of Judge Simpson. I write separately simply to elaborate upon my view that this case need not be remanded even if the Court holds that the "clear and convincing evidence" standard of proof must be applied in expunction hearings.

As Judge Simpson points out, the result would be the same under the higher standard.

In the Adjudication adopted by the Department's Bureau of Hearings and Appeals in support of its final order, the Administrative Law Judge found, "This case comes down to an issue of credibility....C.S. [the victim] was credible that the Appellant touched her in a sexual manner. In her testimony, C.S. described what happened in a detached manner in which she provided prompt straightforward answers lacking embellishment, anger at the Appellant, or bias for her mother.... The Appellant was unsuccessful in discrediting C.S.' testimony....The testimony of the Appellant denying the inappropriate contact was not credible." (Adjudication, p. 11) The abuse occurred when C.S. was sixteen years old. When she testified, C.S. was seventeen, of ample age to understand both the nature of her testimony and the obligation of giving truthful testimony under oath. The Administrative Law Judge was positive and unequivocal in his factfinding, including his assessment of the credibility of witnesses. Under these circumstances, I believe that the clear and convincing evidence standard has easily been satisfied.

Judge SIMPSON joins in this dissenting opinion.

of Statewide toll-free telephone number), 6334 (relating to disposition of complaints received), 6340 (relating to release of information in confidential reports) and 6342[, 23 Pa.C.S. § 6342] (relating to studies of data in records), no person, other than an employee of the department in the course of official duties in connection with the responsibilities of the department under this chapter, shall at any time have access to any information in the pending complaint file or [the ChildLine Registry]. Information in the file of unfounded reports shall be available only to employees of the department pursuant to this subsection, to subjects of a report or law enforcement officials pursuant to section 6340 and to the Office of Attorney General pursuant to section 6345[, 23 Pa.C.S. § 6345] (relating to audits by Attorney General) until the reports are expunged pursuant to section 6337 (relating to disposition of unfounded reports).

DISSENTING OPINION BY Judge SIMPSON.

Because I discern no constitutional flaw in the statutory "substantial evidence" standard for an indicated child abuse report which will be entered in the ChildLine Registry, I respectfully dissent.

I agree with the majority that a *Mathews* analysis is the proper method for assessing procedural due process here. As our Supreme Court explained in the very similar expungement case of *R. v. Department of Public Welfare*, 535 Pa. 440, 449, 636 A.2d 142, 146 (1994) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)), under this analysis the following three factors are to be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements will entail.

Further, I agree with the majority that G.V.'s private interest in his reputation deserves careful consideration. However, my evaluation of the impact of official action is closer to the evaluation made by our Supreme Court in *R.*: any adverse effects on his reputation occasioned by the existence of the indicated report on the ChildLine Registry are very limited because of the numerous "legislatively imposed controls" in the Child Protective Services

Law.[1] *R.*, 535 Pa. at 456, 636 A.2d at 150. G.V. does not claim he wants to work or volunteer with children, and there is no suggestion that he faces any specific financial or associational deprivations from the existence of the report on the ChildLine Registry.

I find less guidance in the decision in *A.Y. v. Department of Public Welfare, Allegheny County Children & Youth Services*, 537 Pa. 116, 641 A.2d 1148 (1994). The appellant in *A.Y.* was a person whose opportunity for employment in her field of study was effectively denied by placing her name on the registry. That is not the situation in the present case. Moreover, the Court did not undertake a full *Mathews* analysis, especially of the "legislatively imposed controls" of the Child Protective Services Law. For these reasons, the Court's brief, undeveloped comment about registry on a "black list" is not particularly instructive. *Id.* at 124–25, 641 A.2d at 1152.

Regarding the risk of an erroneous deprivation of G.V.'s reputational interest by use of the less-demanding substantial evidence standard, I part company with the majority. I believe the result in this case would be the same even with a "clear and convincing" evidence standard. This is because the fact-finder accepted the testimony of the child victim and rejected the exculpatory testimony of G.V. Given these credibility determinations, no change in the burden of proof would alter the result. Therefore, I discern little or no risk of erroneous deprivation of G.V.'s reputational interest.[2]

---

1.  23 Pa.C.S. §§ 6301–6386.

2.  Any risk of erroneous deprivation here flows from the risk that the fact-finder will make unwanted credibility determinations. This risk is present in all adjudications, both civil and criminal, no matter what the standard of proof.

    The risk is mitigated by the presence of a fair tribunal to make the credibility determinations. The risk is further mitigated by judicial review of the credibility determinations

Finally, I evaluate the government's interest, which is expressed at length in Sections 6302(a), (b) of the Child Protective Services Law, 23 Pa.C.S. § 6302(a), (b), with emphasis added:

(a) **Findings.**—*Abused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment.*

(b) **Purpose.**—*It is the purpose of this chapter to encourage more complete reporting of suspected child abuse;* to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained. It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

In pursuit of the "urgent need of an effective child protective service to prevent [children] from suffering further injury and impairment," the General Assembly crafted a system of "more complete reporting of suspected child abuse . . . ." *Id.* The

conscious choice was made for *more* reporting rather than *less* reporting. In light of this choice, reporting based on a substantial evidence standard is rationally related to the government's interest. In contrast, a reporting system based on some higher level of proof would not be consistent with "more complete reporting of suspected child abuse." 23 Pa.C.S. § 6302(b).

I conclude that the substantial evidence standard is designed to serve the state's interest. Reports of suspected child abuse which meet this standard are made available on the ChildLine Registry for a specified period. Information on the ChildLine Registry is shared "only with persons and agencies performing investigative and child protective functions." *R.*, 535 Pa. at 459, 636 A.2d at 151. Thus, the General Assembly "has circumscribed access to [information on the registry] to such an extent that no one other than those persons in a position to serve the government's interest" is authorized to learn of G.V.'s identity. *See id.* at 459–60, 636 A.2d at 51–52. These considerations, together with the very limited risk of erroneous deprivation of G.V.'s reputational interest, lead me to conclude that G.V. received all the process that was due.

In sum, I would not disturb the careful balance drawn by the General Assembly in favor of child victims of abuse. Instead, I would affirm.

Judge LEADBETTER joins in this dissenting opinion.

---

on the substantial evidence test and the requirement that the fact-finder explain its decision in sufficient detail to permit meaningful appellate review. *See R.*, 535 Pa. at 446, 636

A.2d at 145 (credibility recommendations made by administrative hearing officer who did not personally see all the witnesses).