v.

**DEPARTMENT OF PUBLIC WELFARE, Appellant.**

**Lancaster County Children and Youth Services, Intervenor.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 2013.

Decided April 29, 2014.

Anne L. Cooper, Esq., Devine Law Offices, LLC, Lancaster, Jacquelyn Elizabeth Pfursich, Esq., for Lancaster County Children and Youth Social Service Agency.

Mary Patricia Patterson, Esq., Allen C. Warshaw, Esq., Department of Public Welfare, Kenneth J. Serafin, Esq., for Department of Public Welfare.

Michael Eugene Angelotti, Esq., for City of Philadelphia Department of Human Services.

Frank P. Cervone, Esq., Support Center for Child Advocates, Thomas E. Zemaitis, Esq., Pepper Hamilton LLP, Philadelphia, for Support Center for Child Advocates, et al.

Jason Kutulakis, Esq., Abom & Kutulakis, L.L.P., Carlisle, for Pennsylvania Children and Youth Solicitors Association.

Janice L. Martino Longer, Esq., Lancaster, for G.V.

Janet Fran Ginzberg, Esq., Community Legal Services, for Community Legal Services & the ACLU of PA.

Richard Scott McEwen, Esq., PA State Education Association (PSEA), for Pennsylvania State Education Association.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice McCAFFERY.

The Department of Public Welfare ("DPW") appeals from the Commonwealth Court's vacatur and remand of a denial of expungement of an indicated report of child abuse from the statewide ChildLine Registry ("Registry"). DPW challenges the determination that clear and convincing evidence, as opposed to substantial evidence, is required to maintain an indicated report of child abuse. Upon review, we reverse and remand.

In September 2009, Lancaster County Children and Youth Services ("CYS") received a referral that G.V. had been sexually abusing C.S., his 16-year-old great niece, of whom G.V. and his wife, T.V., had custody. CYS conducted an investigation, and on November 5, 2009, filed an "indicated" report against G.V. after finding that "substantial evidence" existed that G.V. had sexually abused C.S. A summary of the indicated report was also filed with the Registry, as required under the Child Protective Services Law, 23 Pa.C.S. §§ 6301–6386 ("CPS Law"). Shortly thereafter, G.V. was informed that he was listed as a perpetrator in the Registry, and he asked that DPW expunge the report on the grounds that it

was inaccurate and/or maintained in a manner inconsistent with the CPS Law. Expungement was denied, and G.V. appealed pursuant to Section 6341(c) of the CPS Law. A hearing was held before an administrative law judge at which several witnesses testified, including G.V., C.S., T.V., an adult daughter of G.V. and T.V., a long-standing friend and neighbor of G.V., and the CYS social worker. Thereafter, the administrative law judge issued an adjudication and recommendation concluding that the indicated report was supported by substantial evidence and that the summary of the indicated report was being maintained in a manner consistent with both the CPS Law and DPW regulations. The administrative law judge found that C.S.'s testimony was credible, and that G.V.'s testimony was incredible due to internal inconsistencies, as well as to other evidence showing that G.V. regularly hid his activities from family members. Upon G.V.'s appeal, the Bureau of Hearings and Appeals adopted the administrative law judge's recommendation and denied expungement. After his motion for reconsideration was denied, G.V. appealed to the Commonwealth Court.

The Commonwealth Court vacated and remanded in a 5–2 opinion authored by Judge Anne E. Covey. *G.V. v. Dep't of Pub. Welfare*, 52 A.3d 434 (Pa.Cmwlth.2012) (en banc). It agreed that the indicated report of sexual abuse was supported by substantial evidence as required under the CPS Law, but observed that there is no legislative mandate or directive indicating what standard of proof is required at an expungement hearing in order to maintain a summary of the indicated report in the Registry. Following the lead of this Court in *R. v. Dep't of Pub. Welfare*, 535 Pa. 440, 636 A.2d 142 (1994), the Commonwealth Court looked to the seminal administrative law decision of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for guidance in assessing a due process claim for violation of an individual's right to protect his or her reputation.[1] It applied the *Mathews* fac-

1.  The three distinct factors that must be considered are as follows:
    First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through

tors, and based thereon concluded that the adverse effects on an alleged child abuse perpetrator's reputation and employment opportunities required that evidence presented at an expungement hearing be clear and convincing in order to maintain the summary of the report in the Registry. The court noted that reputation is a constitutionally protected interest in Pennsylvania,[2] and because the Registry information may be disclosed upon inquiry to employers, school districts, and boy scout, girl scout and other organizations, there is a real threat that persons not specifically authorized to receive the information will be made aware of the allegations, thus posing a risk of unconstitutional deprivation of an individual's privacy interest. While the majority recognized the government's interest, expressly detailed in Section 6302(a) of the CPS Law, in providing effective child protective services in order to prevent abused children from suffering further injury and impairment, it nonetheless concluded:

> Accordingly, as we are statutorily constrained to protect the child from injury or impairment, we hold that substantial evidence must support a determination of whether child abuse has occurred, but there must be clear and convincing evidence of child abuse to maintain statutorily[ ]designated information from an indicated report on the ChildLine Registry.

*G.V., supra* at 446 (emphasis omitted).[3, 4]

Judge Bonnie Brigance Leadbetter dissented, joined by Judge Robert E. Simpson, opining that even under a clear and

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements will entail.
*R. v. Dep't of Pub. Welfare*, 535 Pa. 440, 636 A.2d 142, 146 (1994).

2. "All men ... have certain inherent and indefeasible rights, among which are those of ... protecting ... reputation." Pa. Const. Article I, Section 1.

3. The Commonwealth Court's decision changes the standard of proof it has applied in numerous previous expungement cases. Prior to the instant case, when DPW had shown that an indicated report was supported by substantial evidence at an expungement hearing and

convincing standard, the result of this case would be denial of the request for expungement, based on the administrative law judge's definitive and unequivocal credibility determination that the abuse had occurred.

Judge Simpson also dissented, and was joined by Judge Leadbetter, because he discerned no constitutional flaw in applying the "substantial evidence" standard used to place an indicated child abuse report in the Registry, as the evidentiary standard for maintaining an indicated child abuse report in the Registry. He stated that, just as in *R. v. Dep't of Pub. Welfare*, 535 Pa. 440, 636 A.2d 142 (1994), any potential adverse effect on G.V.'s reputation occasioned by the maintenance of the indicated report in the Registry is limited because of the numerous "legislatively imposed controls" in the CPS Law that limit release of information to only certain individuals. *G.V., supra* at 449 (Simpson, J., dissenting) (cita-

expungement had been denied, those denials had been affirmed. *See, e.g., F.R. v. Dep't of Pub. Welfare*, 4 A.3d 779 (Pa.Cmwlth.2010) (denying expungement where substantial evidence supported indicated report that father caused bruises on child); *D.T. v. Dep't of Pub. Welfare*, 873 A.2d 850 (Pa.Cmwlth.2005) (holding that substantial evidence existed to support an indicated report of child sex abuse against a child-care provider, thus warranting denial of the provider's request to expunge the report); *A.O. v. Dep't of Pub. Welfare*, 838 A.2d 35 (Pa.Cmwlth.2003) (concluding that substantial evidence supported indicated report that daycare provider's son had abused a child so as to support denial of request for expungement). Since its decision in the instant case, the Commonwealth Court has been noting the new standard and either applying it directly or remanding for its application. *See, e.g., T.T. v. Dep't of Pub. Welfare*, 48 A.3d 562 (Pa.Cmwlth.2012); *A.S. v. Dep't of Pub. Welfare*, No. 148 C.D. 2012, 2012 WL 8667590 (Pa.Cmwlth. filed 12/14/12); *C.H. v. Dep't of Pub. Welfare*, No. 815 C.D.2012, 2012 WL 8681510 (Pa.Cmwlth. filed 11/13/12); *D.J. v. Dep't of Pub. Welfare*, No. 1980 C.D.2011, 2012 WL 8699997 (Pa.Cmwlth. filed 9/17/12); *J.M. v. Dep't of Pub. Welfare*, 52 A.3d 552 (Pa.Cmwlth.2012).

4. Prior Commonwealth Court decisions have also required only substantial evidence in other administrative cases where loss of reputation and employment were at risk. *See, e.g., Boguslawski v. Dep't of Educ.*, 837 A.2d 614 (Pa.Cmwlth.2003) (holding that revocation of a teacher's certificate for immorality and intemperance was supported by substantial evidence, notwithstanding his acquittal on criminal charges for improperly touching a child); and *Ruane v. Shippensburg Univ.*, 871 A.2d 859 (Pa.Cmwlth.2005) (holding that a classmate's testimony of sexual assault provided substantial evidence to support a student's suspension from the university).

tion omitted). He also observed that G.V. does not claim to want to work or volunteer with children, and there is no suggestion of a specific financial or associational deprivation which might be created by the maintenance of the summary of the indicated report in the Registry. He opined further that maintaining a record of indicated child abuse based on a substantial evidence standard is rationally related to the government's interest in "complete reporting of suspected child abuse." *Id.* at 450, citing 23 Pa.C.S. § 6302(b) (setting forth the legislature's purpose in enacting the Child Protective Services Law).

■ The issue accepted for review is the following:

Whether Commonwealth Court erred in requiring a "clear and convincing" evidentiary standard of proof in child abuse expunction cases under the Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301–6386, where the legislature had established substantial evidence as the required standard of proof.

*G.V. v. Dep't of Pub. Welfare,* 620 Pa. 58, 66 A.3d 252 (2013).[5]

This Court has described the broad purpose of the Child Protective Services Law as follows:

The need to prevent child abuse and to protect abused children from further injury is critical. The legislature sought to encourage greater reporting of suspected child abuse in order to prevent further abuse and to provide rehabilitative services for abused children and their families. The Act also establishes a statewide central registry for the maintenance of indicated and founded reports of child abuse, as identifying perpetrators of abuse serves to further protect children. Recognizing that identifying someone as a child abuser can profoundly impact that person's reputation, the release of such information is advocated only in certain limited venues. [R]eports of indicated and founded abuse

5. The issue presented is a question of law; accordingly, our standard of review is *de novo* and our scope is plenary. *Glatfelter Pulpwood Co. v. Commonwealth,* 619 Pa. 243, 61 A.3d 993, 998 (2013).

identifying the perpetrator can be released to law enforce-
ment, social work agencies, employers in child care services
and other related venues[ ].

*P.R. v. Dept. of Pub. Welfare*, 569 Pa. 123, 801 A.2d 478, 483
(2002) (citations omitted).

A report of child abuse is characterized as an "indicated
report" if an investigation by the county agency or DPW
determines that "substantial evidence" of the alleged abuse
exists based on available medical evidence, the child protective
service investigation, or an admission of the facts of abuse by
the perpetrator. 23 Pa.C.S. § 6303. "Substantial evidence" is
evidence that outweighs inconsistent evidence and which a
reasonable person would accept as adequate to support a
conclusion. *Id.* The CPS Law requires DPW to maintain a
statewide registry consisting of summaries of indicated re-
ports of child abuse. 23 Pa.C.S. § 6331. The burden is on the
appropriate county agency to show that the indicated report of
abuse is accurate and being maintained in a manner consistent
with the CPS Law. *See* 23 Pa.C.S. §§ 6303, 6341(c). After a
summary of an indicated report is entered in the Registry, the
perpetrator is notified that his or her ability to obtain employ-
ment in a child-care facility or program or a public or private
school may be adversely affected by the entry of the report in
the Registry. 23 Pa.C.S. § 6338(a). When an individual
seeks employment that would bring him or her in direct
contact with children or in which there is a significant likeli-
hood of regular contact with children, or when a person
resides in a "family day-care home," that person must provide
a certification, obtained within the preceding year from DPW,
of whether he or she is named in the Registry as a perpetrator
in an indicated report of child abuse. 23 Pa.C.S. §§ 6344(a),
(b)(2), 6344.1(a), (b), 6344.2.

DPW argues here that the Commonwealth Court's decision
conflicts both with precedential case law and with legislative
mandate. It notes that an expungement hearing may be
requested on the grounds that the indicated report is inaccu-
rate or maintained in a manner inconsistent with the CPS
Law; accordingly, it posits that maintenance of an indicated

report for which there is substantial evidence of the abuse is consistent with its very definition. DPW also notes that indicated reports are "generally confidential" under the CPS Law, and further that the General Assembly narrowly tailored the use and dissemination of the indicated reports. DPW argues that protecting children from abuse should outweigh any interest a child abuse perpetrator has in reputation and potential employment.

Appellee argues that this case presents the opportunity referenced by this Court in *J.S. v. Dep't of Pub. Welfare,* 528 Pa. 243, 596 A.2d 1114, 1116 n. 2 (1991), to address the balance between the statutory duties of public agencies under the CPS Law and an individual's right of reputation guaranteed under the Pennsylvania Constitution. He relies upon *Santosky v. Kramer,* 455 U.S. 745, 756, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (observing that a clear and convincing evidentiary standard is required in government-initiated proceedings that threaten an individual with stigma).

As noted above, the substantial evidence standard provided for in the CPS Law requires evidence that outweighs inconsistent evidence, and which a reasonable person would accept as adequate to support a conclusion. In contrast, the clear and convincing standard requires "evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Commonwealth v. Lee,* 594 Pa. 266, 935 A.2d 865, 883 (2007) (citation omitted). This Court has mandated application of the clear and convincing standard when

> ... the individual interests at stake in a state proceeding are both particularly important and more substantial than mere loss of money. Notwithstanding the state's civil labels and good intentions, the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with a significant deprivation of liberty or stigma.

*Commonwealth v. Maldonado,* 576 Pa. 101, 838 A.2d 710, 715 (2003) (citation omitted).

While this Court has not heretofore directly addressed the issue accepted for review, it has consistently applied the substantial evidence standard to DPW's burden of proof in expungement cases, notwithstanding the reservation expressed in dicta in *J.S., supra.*[6] In *R. v. Dep't of Pub. Welfare,* 535 Pa. 440, 636 A.2d 142, 145 (1994), an appeal from the denial of expungement of an indicated report, then-Chief Justice Nix, writing for the majority, relied upon the general requirement that an administrative agency adjudication must be supported by substantial evidence, citing 2 Pa.C.S. § 704, in rejecting a due process challenge to the hearing process. The substantial evidence requisite has been articulated as part of this Court's standard of review,

> Our review requires that the agency decision be affirmed absent a finding that constitutional rights were violated, an error of law was committed, that the procedure before the agency was contrary to statute, or that the findings of fact are not supported by substantial evidence.

*P.R., supra* at 481.

Most recently, in reviewing the reversal of the denial of a request for expungement, we noted the pendency of the instant case and applied the extant substantial evidence standard. *R.A. v. Dep't of Pub. Welfare,* 623 Pa. 146, 82 A.3d 370, 381 n. 14 (2013).

Looking to the *Mathews* factors, we conclude that the Commonwealth Court did not err in determining that preservation of one's reputation is a recognized and protected interest under Pennsylvania's constitution. *R. v. Dep't of Pub. Welfare,* 535 Pa. 440, 636 A.2d 142, 149 (1994). However, in resolving *R.,* an appeal from a denial of expungement, this Court focused on the extent to which the information contained in an indicated report is readily available or accessible,

6. Then–Chief Justice Nix, in a dissenting posture, "strongly disagreed" with any notion that the clear and convincing evidence standard should be adopted in expungement matters. *J.S. v. Dep't of Pub. Welfare,* 528 Pa. 243, 596 A.2d 1114, 1116 n. 1 (1991) (Nix, C.J., dissenting).

and specifically on the circumstances under which R's identity could be revealed. We observed that Section 6340(a) of the CPS Law provides that only a limited number of people in a limited set of situations have access to the confidential state-wide Registry. We thus concluded that R. was not being stigmatized in the eyes of the general public, and the adverse effects on his reputation were very limited.

Here, the Commonwealth Court did not hew to our extended analysis in *R.* pertaining to the statutory limitations on dissemination of the information contained in the Registry. Rather, it concluded that the actual use of the Registry

> ... by the statutorily[ ]designated government officials, law enforcement and other entities and individuals in responding to the inquiries of employers, school districts, churches, boy and girl scouts, and other organizations[,] creates the very real potential and probability for disclosure to groups and individuals not specifically authorized to receive the information.

*G.V., supra* at 444.

In so concluding, the Commonwealth Court engaged in impermissible speculation that ignored the essence of this Court's opinion:

> It is apparent from these legislatively imposed controls that R. is not being stigmatized in the eyes of the general public. To the contrary, his identity is disclosed to a small number of persons in a very narrow range of situations with the understanding that it will not be revealed to any unauthorized individuals. Therefore, any adverse effects on his reputation are very limited.

*R., supra* at 150.

Having thus taken a wrong turn in assessing the first *Mathews* factor (affected private interest), the Commonwealth Court inevitably erred in its assessment of the second *Mathews* factor (risk of erroneous deprivation of such interest). Because it overstated both the potential and the probability for disclosure to groups and individuals not specifically authorized to receive the Registry information, the court similarly

overestimated the potential risk of deprivation of a fundamental interest and overvalued the benefit of employing the clear and convincing standard of proof.

The Commonwealth Court also erred in its analysis of the third *Mathews* factor, to wit, the government's interest in addressing the urgent need of abused children for protection from further injury and impairment. After quoting Section 6302 and its expression of the Commonwealth's interest in encouraging more complete reporting of suspected child abuse, the court reiterated its previous conclusions in rejecting CYS's argument that the clear and convincing standard would essentially require a criminal conviction before information could be maintained in the Registry:

> The issue here is whether the pursuit of this [governmental] interest by requiring substantial evidence outweighs the risk of an erroneous deprivation of G.V.'s inherent reputational and livelihood interests and personal freedoms. ...
> First, the clear and convincing evidence standard is less burdensome than the beyond a reasonable doubt standard. Second, a lesser burden of proof does not offer adequate protection against a potential erroneous deprivation of an individual's inherent rights and freedoms.

*G.V., supra* at 446.

The court then proceeded to quote further from the CPS Law and did not return to explain its reasoning regarding its weighing of the competing interests.

As noted above, this Court has recognized that the Commonwealth's interests in the need to prevent child abuse and to protect abused children from further injury is fostered by maintenance of the statewide central registry identifying perpetrators of abuse. *P.R., supra* at 483 (citations omitted). The government's interest in addressing the urgent need of abused children for protection from further injury and impairment encompasses both the child or children who were actually abused by the perpetrator, as well as any children who may potentially be abused by the perpetrator. This goal of protection of any potential victims of a perpetrator identified in an

indicated report was largely ignored by the Commonwealth Court in its assessment of the governmental interest at stake here. As stated by Amicus Curiae, the City of Philadelphia, "But for the protection of the public interest of preventing future abuse by those who have abused children previously, the Childline [R]egistry would be wholly useless." Brief for Amicus Curiae, the City of Philadelphia, at 6. We conclude that the Commonwealth Court failed to fully appreciate the legitimate governmental interest in the protection of both actual and potential victims of indicated perpetrators of child abuse.

Accordingly, we hold that the Commonwealth Court erred in requiring a "clear and convincing" evidentiary standard of proof in child abuse expunction cases under the Child Protective Services Law, 23 Pa.C.S. §§ 6301–6386, and that the proper standard of proof is the legislatively established substantial evidence standard. Thus, we reverse the order of the Commonwealth Court and remand this case for that court to review pursuant to the substantial evidence standard.

Chief Justice CASTILLE and Justices EAKIN, BAER, TODD and STEVENS join the opinion.

Justice SAYLOR files a concurring opinion.

Justice BAER files a concurring opinion in which Chief Justice CASTILLE joins.

Justice SAYLOR, concurring.

A portion of the majority's analysis appears to track *R. v. DPW*, 535 Pa. 440, 447, 636 A.2d 142, 145 (1994), in equating the "substantial evidence" standard of the Child Protective Services Law ("CPSL"), *see* 23 Pa.C.S. § 6303(a), with the substantial evidence standard prevailing on appellate review under Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. *See* Majority Opinion at 289, 91 A.3d at 672. These two standards, however, are materially different, since, as the majority otherwise recognizes, the CPSL defines "substantial evidence," for purposes of that enactment, as incorpo-

rating a weighing dynamic generally reserved for fact-finding. *See* 23 Pa.C.S. § 6303(a). Traditional appellate substantial-evidence review, on the other hand, omits all such weighing—instead, this deferential form of review entails only an examination of whether the evidence, viewed in a light most favorable to the prevailing party, is adequate to support the administrative agency's factual findings. *See, e.g., Cinram Mfg., Inc. v. WCAB (Hill)*, 601 Pa. 524, 535, 975 A.2d 577, 583 (2009).[1]

The majority also relies upon R. in its due process assessment under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See* Majority Opinion at 288–90, 91 A.3d at 672–73. In my view, however, the *R.* decision employed multiple misstatements and mischaracterizations to support an overly dismissive approach to the reputational concerns of persons whose names are entered in a child-abuse registry. For example, the opinion indicated that disclosure of clearance information to prospective employers or adoption agencies would occur only if an indicated report of abuse was issued within the twelve months prior to the time a job or adoption application was submitted. *See R.*, 535 Pa. at 454–55, 636 A.2d at 149. This portrayal, however, reflects a patent misreading of the CPSL. While the clearance form submitted by an applicant must be current, *i.e.*, obtained within one year

1. Unfortunately, the Legislature's approach of redefining, for purposes of the CPSL, what otherwise serves as a term of art in the arena of administrative law has yielded a confusing array of admixture in the judicial decisions. *See, e.g., J.S. v. DPW*, 528 Pa. 243, 246, 596 A.2d 1114, 1115 (1991) (correctly describing traditional substantial-evidence review, then pronouncing that, "[i]n other words, the evidence must 'so preponderate in favor of a conclusion that it outweighs ... any inconsistent evidence and reasonable inferences drawn therefrom' " (citation omitted)). Furthermore, the use of a preponderance-based standard at the investigative level to justify entry of an individual's name in the ChildLine registry prior to any judicial or quasi-judicial assessment is also problematic, as the practice is in tension with the constitutional preference for pre-deprivation process. *See generally Zinermon v. Burch*, 494 U.S. 113, 132, 110 S.Ct. 975, 987, 108 L.Ed.2d 100 (1990) (explaining that, if a state feasibly can provide a hearing before effectuating a deprivation of a protected interest, it generally must do so in order to minimize substantively unfair or mistaken deprivations); *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 901 (8th Cir.1994) ("No matter how elaborate, an investigation does not replace a hearing.").

of the application, *see* 23 Pa.C.S. § 6344(b)(2), (d), its *content* is by no means constrained to a one-year look-back. Indeed, in certain cases, the statute contains a bright-line prohibition against hiring individuals who are unable to obtain clearance, where the underlying abuse was purportedly committed within five years of the verification. *See* 23 Pa.C.S. § 6344(c).

By way of another example, the correlation drawn in *R.* between an employer's refusal to extend an at-will contract and the potential disabilities facing persons subject to a false indicated report of child abuse demonstrates no sensitivity to the very different interests at stake in the latter scenario. *See R.*, 535 Pa. at 452, 636 A.2d at 148. Indeed, I find the analogy to be strained beyond reason.

In other words, the *R.* Court went out of its way to minimize the liberty and reputational interests of those subject to child-abuse reports. In doing so, it set a tone which was in material tension with expressions of the Court displaying appropriate circumspection. *Compare, e.g., A.Y. v. DPW*, 537 Pa. 116, 124, 641 A.2d 1148, 1152 (1994) ("[A]n administrative adjudication of suspected child abuse is of the most serious nature."); *J.S.*, 528 Pa. at 248 n. 2, 596 A.2d at 1116 n. 2 ("[T]his Court is quite troubled by the use of any standard less than requiring clear and convincing evidence.").

For my own part, I share the concern that there is substantial stigma associated with inclusion of one's name in a child-abuse registry. *Accord Jackson v. Marshall*, 19 Va.App. 628, 454 S.E.2d 23, 27 (1995) ("[T]here is no more deplorable badge of infamy a person can wear than that of being a child abuser.") (quotation omitted). Further, I am less confident than the *R.* Court and the majority that dissemination of this information is readily capable of close containment. *Accord G.V. v. DPW*, 52 A.3d 434, 444 (Pa.Cmwlth.2012) ("Even though the statute seeks to minimize disclosure of the Child-Line Registry information, its actual use by the statutorily-designated government officials, law enforcement and other entities and individuals in responding to the inquiries of employers, school districts, churches, boy and girl scouts, and other organizations creates the very real potential and proba-

bility for disclosure to groups and individuals not specifically authorized to receive the information."). Moreover, from my point of view, the analysis should encompass other salient factors, such as the rate of reversal of indicated reports, in terms of assessing the risk of an erroneous deprivation, *see, e.g.,* Brief for Amicus Pa. State Educ. Ass'n at 22–23 ("In the 2012 Pennsylvania Department of Public Welfare's Child Abuse Report . . ., out of the 160 appeals of 'substantiated' reports that were decided on the merits, only five were upheld while 155 were reversed. In other words, 97% of the cases decided on the merits were overturned." (footnote and citations omitted)), and the length of time which may pass before a post-deprivation adjudication may be completed, *see id.* at 23 n. 3 ("Perhaps just as, if not more troubling is the fact that DPW reports that, in 2012, 759 or 75% of second level appeals were still pending. This suggests that most appeals are languishing while the wrongly named individual's reputation is damaged by continued publication of the person's name on the ChildLine registry.").

Taking such elements into account, I find this to be a much closer case than is reflected in the majority opinion. Nevertheless, ultimately, in light of the Commonwealth's undeniably vital interest in protecting children from abuse, giving account for the interests of those accused (including very real disabilities facing some in terms of securing employment working with children), and at least in the context of a registry scheme imbued with adequate procedural protections, I agree with the majority that the statutory preponderance-based standard meets basic due-process requirements. *Accord Jamison v. Missouri Dep't of Soc. Servs.,* 218 S.W.3d 399, 411–12 (Mo. 2007); *In re W.B.M.,* 202 N.C.App. 606, 690 S.E.2d 41, 52 (2010). I would only observe that the inquiry into whether the Pennsylvania statute reflects adequate process remains seriously in question.[2]

---

**2.** *Accord Jamison,* 218 S.W.3d at 408–10 (requiring a pre-deprivation hearing as a prerequisite to inclusion of an accused's name in a child-abuse registry); *W.B.M.,* 690 S.E.2d at 52 (same); *K.J. v. DPW,* 767 A.2d 609, 616 n. 9 (Pa.Cmwlth.2001) (Friedman, J., dissenting) ("It shocks my conscience that the Law would allow the investigating

Justice BAER, concurring.

While I join the Majority Opinion in its entirety, I write separately to address what I view as an important question squarely raised in the case, but, respectfully, not answered in the Majority Opinion. The Commonwealth Court opined that the Child Protective Service Law (CPSL), §§ 6301–86, is silent regarding the standard of proof required at expunction hearings to maintain an indicated report of child abuse in the ChildLine Registry. It then proceeded to require "clear and convincing evidence" to avoid expungement of the child abuse summary from the Registry.[1] *See G.V. v. Dep't of Pub. Welfare*, 52 A.3d 434, 439–40 (Pa.Cmwth.2012). Thus, the Commonwealth, as appellant, states the issue herein as: "[w]hether [the] Commonwealth Court erred in requiring a 'clear and convincing' evidentiary standard of proof in child abuse expunction cases under the [CPSL], where the legislature had established substantial evidence as the required standard of proof."[2] *See* Majority Opinion at 286, 91 A.3d at

caseworker to render a *de facto* adjudication that is adverse to an individual's reputation *without* an independent adjudicator having had the opportunity to consider the investigator's evidence of child abuse in accordance with established procedures of due process."). *See generally* Brief for *Amicus* Pa. State Educ. Ass'n at 8–9 (positing that "[t]he procedure contains numerous due process irregularities such as the lack of pre-[deprivation] notice and hearing, failure to provide a prompt post-determination hearing and the commingling of investigative, prosecutorial and judicial functions when caseworkers who are inexperienced in the law investigate complaints, weigh evidence and judge whether to issue an indicated report.").

1. Clear and convincing evidence, which is the highest standard of proof employed in civil proceedings, "requires evidence that is so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue." *Commonwealth v. Maldonado*, 576 Pa. 101, 838 A.2d 710, 715 (2003).

2. The CPSL defines substantial evidence as "evidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303(a). Relying on its own precedent, the Commonwealth Court, *sub judice*, equated the "substantial evidence" evidentiary standard in child abuse cases to the "preponderance of the evidence" standard commonly used in civil proceedings. *See G.V. v. Dep't of Pub. Welfare*, 52 A.3d 434, 436 (Pa.Cmwlth.2012) (citing *S.T. v. Dep't of Pub. Welfare*, 681 A.2d 853, 857 (Pa.Cmwlth.1996)).

670. Without analysis of the applicable statutory language, the Majority Opinion summarily concludes that "the proper standard of proof [at expunction hearings] is the legislatively established substantial evidence standard," and then proceeds to address various constitutional concerns raised by the trial court's opinion. Majority Opinion at 292, 91 A.3d at 673–74. I believe it appropriate and worthwhile for this Court to engage in the statutory analysis required to conclude that, contrary to the Commonwealth Court's holding, the CPSL does require substantial evidence to maintain an indicated report summary of child abuse in the ChildLine Registry.

The Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.* directs that the object of all interpretation and construction of statutes is to ascertain and effectuate the legislature's intent. 1 Pa.C.S. § 1921(a); *Chanceford Aviation Properties, LLP v. Chanceford Twp. Bd. of Supervisors,* 592 Pa. 100, 923 A.2d 1099, 1104 (2007). Generally, the best indicator of legislative intent is the plain language of the statute. *Walker v. Eleby,* 577 Pa. 104, 842 A.2d 389, 400 (2004). In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a). When the words of a statute are ambiguous a court may resort to the rules of statutory construction including those provided in 1 Pa.C.S. § 1921(c).[3] *Chanceford,* 923 A.2d at 1104. The statute must "be construed, if possible, to give effect to all its provisions," so that no provision is reduced to mere surplusage. 1 Pa.C.S. § 1921(a); *Walker,* 842 A.2d at 400. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is

3. The factors in § 1921(c) are:
   (1) The occasion and necessity for the statute.
   (2) The circumstances under which it was enacted.
   (3) The mischief to be remedied.
   (4) The object to be attained.
   (5) The former law, if any, including other statutes upon the same or similar subjects.
   (6) The consequences of a particular interpretation.
   (7) The contemporaneous legislative history.
   (8) Legislative and administrative interpretations of such statute.
   1 Pa.C.S. § 1921(c).

absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

As noted by the Majority, the CPSL tasks Pennsylvania child protective agencies with investigating reports of suspected child abuse. 23 Pa.C.S. § 6368. If an agency finds substantial evidence that the alleged abuse occurred, the CPSL directs the agency to prepare an "indicated report" of child abuse. 23 Pa.C.S. § 6303(a);[4] 6368(c). Summaries of these indicated reports are entered in a statewide registry known as the ChildLine Registry as of course. 23 Pa.C.S. § 6338. A person accused in an indicated report has forty-five days after receiving notice of the report to petition the Secretary of Public Welfare for amendment or expunction on the grounds that the report is inaccurate or being maintained in a manner inconsistent with the CPSL. 23 Pa.C.S. § 6341. Section 6341(c) further provides:

> If the secretary refuses the request [for amendment/expunction] ... or does not act within a reasonable time, but in no event later than 30 days after receipt of the request, the perpetrator ... shall have the right to a hearing before the secretary or a designated agent of the secretary **to determine whether the summary of the indicated report in the Statewide central register should be amended or expunged on the grounds that it is inaccurate or that it is being maintained in a manner inconsistent with this chapter.... The burden of proof in the hearing shall be on the appropriate county agency.**

23 Pa.C.S. § 6341(c) (emphasis added).

By holding that Section 6341(c) is silent regarding the standard of proof required at expunction hearings, the Com-

---

4. The CPSL defines an "indicated report" of child abuse as:

    A child abuse report made pursuant to the [CPSL] if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:

    (1) Available medical evidence.
    (2) The child protective services investigation.
    (3) An admission of the acts of abuse by the perpetrator.

    23 Pa.C.S. § 6303(a).

monwealth Court perceived a "gap" in the CPSL where none existed and interposed an evidentiary standard (clear and convincing evidence) that is contrary to the statute when read as a whole. Specifically, the Commonwealth Court's interpretation of Section 6341(c) fails to give proper effect to language in that section which authorizes the Secretary of Public Welfare to expunge indicated reports from the ChildLine Registry when the reports are "inaccurate or . . . being maintained in a manner inconsistent with [the CPSL]." *See* 23 Pa.C.S. § 6341(c).

As this language directs; we look to other provisions of the CPSL to determine if a report is being maintained in a manner consistent with the law. In Section 6303(a), the CPSL plainly states that a report of child abuse is indicated upon a showing of substantial evidence. Because an indicated report is created and entered into the ChildLine Registry on the basis of substantial evidence, the report is properly maintained in the registry on the basis of the same substantial evidence. Accordingly, when Section 6341(c) directs the Secretary to expunge an indicated report summary from the registry in the event that the appropriate county agency fails to demonstrate that the report is accurate and maintained in a manner consistent with the CPSL, the provision, by reference to the rest of the CPSL, identifies substantial evidence as the appropriate standard of proof for overcoming an expunction hearing challenge and maintaining an indicated report in the Registry thereafter.

The Commonwealth Court's construction of the CPSL to require clear and convincing evidence to maintain an indicated report in the Registry once a Section 6341(c) challenge has been interposed leads to inconsistencies that the General Assembly would not have intended. By permitting a lower burden of proof, substantial evidence, for creating and entering an indicated report summary in the ChildLine Registry, and then imposing a higher burden of proof, clear and convincing evidence, to maintain such a report in the Registry, the Commonwealth Court created an outcome where the Child-Line Registry will inevitably contain reports based on differ-

ent evidentiary standards. Because not all individuals named in the Registry will challenge their indicated status within the forty-five day statutory period, many reports of abuse will remain in the Registry after being established by substantial evidence, while those that are challenged will remain only if they are established by clear and convincing evidence. As we presume the General Assembly does not intend a result that is absurd or unreasonable, we respectfully reject the Commonwealth Court's construction of the CPSL as contrary to the General Assembly's intent on the basis of our statutory construction analysis. *See* 1 Pa.C.S. § 1922(1).

Moreover, this result is consistent with the statutory construction factors of 1 Pa.C.S. § 1921(c)(1) through (4), as set forth at note 3, infra. The occasion and the necessity for this statute, the circumstances for its enactment, the mischief to be remedied and its object all involve protection of children from adults who, if given the opportunity, would prey upon them. While it makes every sense that our Legislature would build Section 6341(c) into this statute to allow the falsely accused to seek amendment or expungement of a report maintained in the Childline Registry, it makes no sense that they would impose a clear and convincing standard upon the Commonwealth to defend indicated reports created on the basis of substantial evidence, and thus increase the likelihood that persons who abused children will escape the registry, leaving them free to prey again upon an uniformed and unprotected public.

It is noteworthy that Section 6340(a) limits access to the ChildLine Registry to only certain individuals charged with the care and supervision of children. The confidential nature of the ChildLine Registry is consistent with the General Assembly requiring substantial evidence as the appropriate standard of proof for overcoming an expunction hearing challenge. Thus, in contemplating these basic tenants of statutory construction, I also conclude that the Legislature intended to apply the substantial evidence, rather than clear and convincing evidence, standard to an action to amend or expunge an entry into the statewide Childline Registry.

For the reasons indicated above, I concur with the Majority that the CPSL requires substantial evidence in child abuse expunction cases to maintain an indicated report summary of child abuse in the ChildLine Registry. I further agree with the Majority Opinion's analysis and conclusion that the substantial evidence standard does not offend due process or the constitutional right to reputation as contained in Article I, Section 1 of the Pennsylvania Constitution. Finally, so that there is no possible uncertainty, I note that I agree with the precedent cited at note 2 which equates the evidentiary standard of substantial evidence to the well-known civil standard of preponderance of the evidence.

Chief Justice CASTILLE joins.