J-S62019-17

2017 PA Super 411

IN THE INTEREST OF: L.B., A MINOR  :  IN THE SUPERIOR COURT OF
                                        :         PENNSYLVANIA
                                          :
APPEAL OF: CCCYS                  :
                                          :
                                          :
                                          :
                                          :
                                          :  No. 884 MDA 2017

Appeal from the Order Entered May 24, 2017
In the Court of Common Pleas of Clinton County Juvenile Division at
No(s):  CP-18-DP-0000009-2017

BEFORE:   STABILE, MOULTON, and STRASSBURGER*, JJ.

OPINION BY MOULTON, J.:                       **FILED DECEMBER 27, 2017**

       Clinton County Children and Youth Services ("CYS") appeals from the order entered May 24, 2017 finding that CYS cannot establish child abuse under the Child Protective Services Law ("CPSL"), 23 Pa.C.S. §§ 6301 *et seq.*, based "on the actions committed by" A.A.R. ("Mother") while she was pregnant with L.B. ("Child").  We conclude that a mother's use of illegal drugs while pregnant may constitute child abuse under the CPSL if CYS establishes that, by using the illegal drugs, the mother intentionally, knowingly, or recklessly caused, or created a reasonable likelihood of, bodily injury to a child **after** birth.  We therefore vacate the order and remand for further proceedings.

       The trial court summarized the relevant procedural and factual history as follows:

_____
     *   Retired Senior Judge assigned to the Superior Court.

On February 7, 2017, [CYS] filed an Application for Emergency Protective Custody indicating that [Child] was born [in] January [] 2017 at the Williamsport Hospital, that Mother had tested positive for marijuana and suboxone and that Mother on January 27, 2017 while pregnant had completed a drug test and was positive for opiates, benzodiazepines and marijuana. [CYS] also alleged that [Child] was suffering from withdrawal symptoms and was undergoing treatment at the Williamsport Hospital.

This Court issued an Order for Emergency Protective Custody on February 7, 2017. On February 10, 2017, the Honorable Michael F. Salisbury conducted a 72 hour Shelter Care Hearing due to this Court's unavailability and continued legal and physical custody of the child with [CYS]. [CYS] timely filed a Dependency Petition on February 13, 2017 alleging that the child was without proper parental care or control and further alleged that the child was a victim of child abuse as defined by 23 Pa. C.S.A. § 6303. Specifically, [CYS] alleged and has continued to argue that under Subsection 6303(b.1)(1) . . . the parent, specifically Mother, caused bodily injury to the child through a recent act or failure to act.[1] [CYS] alleged in the Dependency Petition that the child had been in Williamsport Hospital for a period of nineteen (19) days suffering from drug dependence withdrawal due to the substances Mother ingested while Mother was pregnant with the child and that Mother tested positive for marijuana, opiates and benzodiazepines at the time of the child's birth. Mother had no prescription for any of these medications.

. . .

[T]his Court entered an Order finding the child dependent on March 15, 2017, maintaining legal and physical custody of the child with [CYS] and deferring a decision on the issue whether the child was a victim of abuse until the Dispositional Hearing which was agreed to by all of the parties.

---

[1] The dependency petition alleged Mother committed child abuse under subsection 6303(b.1)(1). At argument and in its briefs before both the trial court and this Court, CYS argued that Mother committed child abuse under subsections 6303(b.1)(1) or (5).

On March 16, 2017, this Court entered an Order directing the Solicitor for [CYS], the attorney for Mother and the attorney for Father to file an appropriate Memorandum of Law on the issue of whether Mother may be found to have committed abuse of this child as alleged by [CYS]. Mother's attorney and Father's attorney, along with [CYS's] Solicitor filed said Memorandums of Law timely and at the Dispositional Hearing on March 30, 2017, this Court continued legal and physical custody of the child with [CYS]. This Court also at the Dispositional Hearing directed the Office of Court Administrator to schedule a further hearing concerning the abuse issue as insufficient time was allotted at that March 30, 2017 proceeding to receive sufficient evidence to decide that issue. The Office of Court Administrator scheduled the issue of abuse for an extended hearing on May 26, 2017. Further, a Permanency Review Hearing was also scheduled for May 26, 2017. The Guardian Ad Litem filed a request for argument on April 4, 2017 regarding the issue of abuse, indicating that the Guardian Ad Litem believed that it would be advantageous for this Court and the parties for this Court to decide the legal issue before receiving testimony and evidence at an extended hearing. This Court scheduled argument for May 9, 2017.

Trial Court Opinion, 5/24/17, at 1-4 ("Rule 1925(a) Op.").

The trial court heard argument from all counsel and the guardian ad litem on May 9, 2017 to determine whether Mother had committed child abuse within the meaning of section 6303(b.1) of the CPSL. On May 24, 2017, the trial court filed an order finding that CYS "cannot establish child abuse . . . on the actions committed by Mother while the child was a fetus." Order, 5/23/17; *see also* Rule 1925(a) Op. at 4 ("[T]he law does not provide for finding of abuse due to actions taken by an individual upon a fetus."). On May 25, 2017, CYS timely filed a notice of appeal.

On appeal, CYS raises the following issue for our review: "Whether the Trial Court erred by finding that [CYS] cannot establish child abuse in the

matter of the actions committed by Mother, reasoning that the child was a fetus and not considered a child pursuant to 23 Pa.C.S. § 630[3]." CYS's Br. at 4.

CYS argues that Mother's prenatal drug use was a "recent act or failure to act" that "caus[ed]," or "creat[ed] a reasonable likelihood of," bodily injury under section 6303(b.1)(1) or (5) because that drug use caused Child to be born with withdrawal symptoms. The trial court rejected this argument, concluding that the CPSL does not permit a finding of child abuse based on Mother's actions before Child was born.

"A challenge to the court's interpretation and application of a statute raises a question of law." *In re A.B.*, 987 A.2d 769, 773 (Pa.Super. 2009) (*en banc*). Our standard of review is *de novo*, and our scope of review is plenary. *D.K. v. S.P.K.*, 102 A.3d 467, 471 (Pa.Super. 2014). This Court has set forth the following principles for statutory interpretation:

> [O]ur Court has long recognized the following principles of statutory construction set forth in the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq.*:
>
> > The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or 'spirit' of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its

provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

*Id.* at 471-72 (quoting *C.B. v. J.B.*, 65 A.3d 946, 951 (Pa.Super. 2013)).

"As part of [a] dependency adjudication, a court may find a parent to be the perpetrator of child abuse," as defined by the CPSL. *In re L.Z.*, 111 A.3d 1164, 1176 (Pa. 2015). The CPSL defines "child abuse" in relevant part as follows:

The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

(1) Causing bodily injury to a child through any recent act or failure to act.

. . .

(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

23 Pa.C.S. § 6303(b.1)(1), (5). The CPSL defines "child" as "[a]n individual under 18 years of age," 23 Pa.C.S. § 6303(a), and "bodily injury" as "[i]mpairment of physical condition or substantial pain." *Id.* at 6303(a).[2]

Under the plain language of the statute, Mother's illegal drug use while pregnant may constitute child abuse if the drug use caused bodily injury to Child. We agree with Mother that a "fetus" or "unborn child" does not meet

---

[2] The question whether Child suffered "bodily injury" within the meaning of the CPSL is not before us on this appeal.

the definition of "child" under the CPSL.[3]  CYS does not appear to disagree.[4]

Once born, however, the infant is a "child" – "[a]n individual under 18 years of age" – as defined by the statute.  Further, Mother's drug use is a "recent act or failure to act" under 6303(b.1)(1) and (5).  Therefore, if CYS establishes that through Mother's prenatal illegal drug use she "intentionally, knowingly or recklessly" caused, or created a reasonable likelihood of, bodily injury to Child after birth, a finding of "child abuse" would be proper under section 6303(b.1)(1) and/or (5).

A finding of "child abuse" under the CPSL is not a finding of criminal conduct.[5]  The Pennsylvania Supreme Court has described the purpose of the CPSL as follows:

_____

[3] We note that the CPSL also includes a definition of "newborn," providing that a "newborn" is "[a] child less than 28 days of age as reasonably determined by a physician."  23 Pa.C.S. § 6303(a) (incorporating definition of newborn contained in section 6502); 23 Pa.C.S. § 6502.  Further, the Pennsylvania General Assembly included in other statutes a definition of, and provided protections for, "fetus" and "unborn child."  For example, the Pennsylvania Abortion Control Act defines "unborn child" and "fetus," stating "[e]ach term shall mean an individual organism of the species homo sapiens from fertilization until live birth," 18 Pa.C.S. § 3203, and the Crimes Against the Unborn Child Act adopts the definition of "unborn child" found in the Abortion Control Act, 18 Pa.C.S. § 2602.  The CPSL includes no such definitions.

[4] Rather, CYS argues that a mother's actions while pregnant may result in a finding of child abuse "once the fetus is born and a child as defined by 23 Pa.C.S. § 6303."  CYS's Br. at 17.

[5] The Pennsylvania General Assembly has not created a distinct crime of "child abuse."  Instead, crimes that specifically address child victims are

The need to prevent child abuse and to protect abused children from further injury is critical. The legislature sought to encourage greater reporting of suspected child abuse in order to prevent further abuse and to provide rehabilitative services for abused children and their families.[6] The Act also establishes a statewide central registry for the maintenance of indicated and founded reports of child

_____

found in various parts of the crimes code. **See, e.g.,** 18 Pa.C.S. § 3122.1 (statutory sexual assault); 18 Pa.C.S. § 3121(c) (rape of a child); 18 Pa.C.S. § 3121(d) (rape of a child with serious bodily injury); 18 Pa.C.S. § 2901(a.1) (kidnapping of a minor); 18 Pa.C.S. § 2702(a)(8) (defining aggravated assault to include "to cause or intentionally, knowingly or recklessly causes bodily injury to a child less than six years of age, by a person 18 years of age or older"); and 18 Pa.C.S. § 2701(b) (grading simple assault as a misdemeanor of the first degree if committed against a child under the age of 12 by a person over the age of 18).

[6] Section 6386 of the CPSL requires mandatory reporting with respect to children under one year of age, under the following circumstances:

**(a) When report to be made.--**A health care provider shall immediately make a report or cause a report to be made to the appropriate county agency if the provider is involved in the delivery or care of a child under one year of age who is born and identified as being affected by any of the following:

(1) Illegal substance abuse by the child's mother.

(2) Withdrawal symptoms resulting from prenatal drug exposure unless the child's mother, during the pregnancy, was:

(i) under the care of a prescribing medical professional; and

(ii) in compliance with the directions for the administration of a prescription drug as directed by the prescribing medical professional.

(3) A Fetal Alcohol Spectrum Disorder.

23 Pa.C.S. § 6386(a).

abuse, as identifying perpetrators of abuse serves to further protect children.  Recognizing that identifying someone as a child abuser can profoundly impact that person's reputation, the release of such information is advocated only in certain limited venues.  [R]eports of indicated and founded abuse identifying the perpetrator can be released to law enforcement, social work agencies, employers in child care services and other related venues[].

*G.V. v. Dep't of Public Welfare*, 91 A.3d 667, 670-71 (Pa. 2014) (quoting *P.R. v. Dept. of Pub. Welfare*, 801 A.2d 478, 483 (2002)) (alterations in original).  Further, "[a]n individual can . . . petition to expunge the founded report[7] from ChildLine through a Department of Public Welfare administrative process that would eventually be subject to appeal in Commonwealth Court." *In re L.Z.*, 111 A.3d at 1177.

The sole question before us is whether a mother's illegal drug use while pregnant may constitute child abuse under the CPSL if it caused, or created a reasonable likelihood of, bodily injury to a child after birth.  We make no determination as to whether CYS has met its burden in this case.  Nor do we address what other acts by a mother while pregnant may give rise to a finding of child abuse.  We emphasize, however, that prenatal conduct supports such a finding only when the actor "intentionally, knowingly, or recklessly" caused, or created a reasonable likelihood of, bodily injury to a child after birth.

_____

[7] If a trial court finds a parent to be a perpetrator of child abuse as part of a dependency adjudication, the CYS agency would file a "founded report" with the Department of Public Welfare, which would trigger inclusion on the ChildLine Registry.  *In re L.Z.*, 111 A.3d at 1176-77.  Inclusion on the ChildLine Registry also can be triggered outside of the dependency process. *Id.* at 1177.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Stabile joins the opinion.

Judge Strassburger files a concurring opinion in which Judge Moulton joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/17