J-A15030-20
J-A15031-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.B., FATHER | : | No. 121 EDA 2020 |

Appeal from the Order Entered December 16, 2019
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001613-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: K.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.B., FATHER | : | No. 127 EDA 2020 |

Appeal from the Order Entered December 16, 2019
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001614-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.B., FATHER | : | No. 129 EDA 2020 |

Appeal from the Order Entered December 16, 2019
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001615-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: C.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.B., MOTHER | : | No. 124 EDA 2020 |

Appeal from the Order Entered December 16, 2019
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001613-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: K.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

J-A15030-20
J-A15031-20

|  | : |  |
| --- | --- | --- |
| APPEAL OF: S.B., MOTHER | : | No. 125 EDA 2020 |

Appeal from the Order Entered December 16, 2019
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001614-2019

| IN THE INTEREST OF: A.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
|  | : | PENNSYLVANIA |
|  | : |  |
| APPEAL OF: S.B., MOTHER | : | No. 128 EDA 2020 |

Appeal from the Order Entered December 16, 2019
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001615-2019

| IN THE INTEREST OF: Y.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
|  | : | PENNSYLVANIA |
|  | : |  |
| APPEAL OF: S.B., MOTHER | : | No. 130 EDA 2020 |

Appeal from the Order Entered December 16, 2019
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001612-2019

BEFORE:  LAZARUS, J., KING, J. and STRASSBURGER, J.*

DISSENTING MEMORANDUM BY STRASSBURGER, J.:**FILED SEPTEMBER 02, 2020**

Because I conclude that the trial court erred in finding Parents to be perpetrators of child abuse against K.B., and would therefore grant relief on Parents' first claim and reach the merits of Parents' dependency and removal claims, I respectfully dissent.

I begin with an overview of the applicable law regarding a finding of

_____
* Retired Senior Judge assigned to the Superior Court.

- 2 -

child abuse.

> [T]he requisite standard of proof for a finding of child abuse pursuant to [subs]ection 6303(b.1) of the CPSL is clear and convincing evidence. ***In re L.Z.***, [] 111 A.3d 1164, 1174 ([Pa.] 2015) ("a petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations, 42 Pa.C.S. § 6341(c)"). Clear and convincing evidence is "evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." ***G.V. v. Dep't of Pub. Welfare***, [] 91 A.3d 667, 672 ([Pa.] 2014). [H]owever, in certain situations, the **identity** of the abuser need only be established through *prima facie* evidence. ***In re L.Z.***, 111 A.3d at 1174. As an appellate court, we are required to accept the findings of fact and credibility determinations of the trial court, if they are supported by the record; however, we are not bound by the lower court's inferences or conclusions of law. ***Id.***

***Interest of N.B.-A.***, 224 A.3d 661, 668 (Pa. 2020) (emphasis in original).

Here, the trial court found Parents to be perpetrators of child abuse pursuant to 23 Pa.C.S. § 6303(b.1)(1), which provides that child abuse occurs by "intentionally, knowingly or recklessly… [c]ausing bodily injury to a child through any recent act or failure to act." Specifically, the trial court found Parents did not act intentionally or knowingly, but "there's clear and convincing evidence that the parents recklessly committed child abuse." N.T., 12/16/2019, at 184; ***see also id.*** at 182. Regarding recklessness,

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3); *see also* 23 Pa.C.S. § 6303(a) (adopting culpability

definitions provided in 18 Pa.C.S. § 302).

In so finding, the trial court relied on the presumption of abuse in 23

Pa.C.S. § 6381(d).

> [E]vidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

*In re L.V.*, 127 A.3d 831, 837-38 (Pa. Super. 2015) (citation omitted).

Specifically, the trial court held as follows.

> Now, you would all agree and I'll make it a finding of fact, that Dr. Brennan was pretty convincing and credible that this child sustained very substantial injuries, to the point that he would have been in a lot of pain.
>
> Based on the testimony that I heard, I would find that there's clear and convincing evidence that the parents recklessly committed child abuse.
>
> Now, that means, okay, it could be by omission and the presumption was not rebutted, okay? That being said, the goal is reunification.

N.T., 12/16/2019, at 184. In its Pa.R.A.P. 1925(a) opinion, the trial court

further explained that neither Mother nor Father

intentionally or knowingly caused the unexplained injuries to Child[]. However, the trial court did find by clear and convincing evidence that Child[] suffered injuries of such a nature that were reckless and would ordinarily not be sustained or exist by reason of the acts or omissions of the parent. (N.T. 12/16/19, pgs. 179-186). Mother [and Father were] unable to rebut the presumption that [they were two] of the perpetrators of child abuse. Consequently, the trial court did not err or abuse its discretion in finding child abuse as to Child[].

Trial Court Opinion, 3/5/2020, at 12.[1]  Notably, the trial court offered no analysis at the time of its holding or in its Pa.R.A.P. 1925(a) opinion as to how Mother and Father failed to rebut the presumption or how they met the standard for recklessness.

There is no dispute that K.B. suffered bodily injury that was the result of an act or the failure to act by someone.  However, as noted by Mother and Father, the trial court's finding that K.B. was abused does not end the inquiry.  *See* Mother's Brief at 28; Father's Brief at 28.  According to Parents, "the evidence of record, in combination with the specific findings of the trial court and measured against the appropriate legal standards, does not support the trial court's conclusion" that Parents committed the abuse by act or omission.  Mother's Brief at 28-29; Father's Brief at 28-29.

The Majority concludes that "Mother and Father failed to rebut the presumption by presenting evidence or testimony from themselves, Paternal Grandmother, or either babysitter establishing that K.B. was not in their care

---

[1] Because the trial court filed nearly identical opinions pursuant to Pa.R.A.P. 1925(a) for both Father and Mother on March 5, 2020, I refer to them interchangeably.

when he suffered his injuries, and that they had no reason to question their decision to leave [K.B.] in babysitters' and Paternal Grandmother's care." Majority at 25 (footnote omitted). Importantly, in its recitation of the facts, the Majority significantly downplays Paternal Grandmother's role during the relevant time period of Sunday evening to Monday morning,[2] stating merely

_____

[2] This is assuming that the trial court did not err in finding that the injury occurred between late Sunday evening and early Monday morning. Babysitter #2 testified that when she arrived home K.B. was on his right side, which was not normal, and then when he woke up following her arrival, he gave an abnormal grunt cry, as if he were hurt. N.T., 12/16/2019, at 147-48. The trial court discounted this testimony and concluded that the injury occurred sometime after 7:30 p.m. on Sunday because "if he's sleeping on his right side, he could not have been hurt at that time[.]" N.T., 12/16/2019, at 181. Notably, there was no evidence presented that K.B. suffered the two injuries simultaneously. Dr. Brennan testified that a child could sustain the shoulder injury, which is highly specific for an abusive injury, and not present any differently. Contrarily, the arm break, which is specific for a traumatic cause, would be exceptionally painful. Although the arm break injury could be due to accidental trauma, when coupled with the shoulder injury Dr. Brennan believed that to be less likely. Finally, Dr. Brennan testified splinting the arm would considerably reduce the amount of pain from the arm break, and that babies can sleep through these injuries eventually, but they would be uncomfortable and wake up if moved. **See** N.T., 11/8/2019, at 17-22, 31. Thus, it is entirely conceivable that K.B. sustained the shoulder injury prior to 7:30 p.m. on Sunday, while K.B. was in the sole care of Babysitter #1. Even if the trial court's finding that the injury must have occurred between late Sunday night and early Monday morning is not supported by the evidence in the record because evidence shows it is just as likely that the injuries occurred sometime between Babysitter #1 sending photographs of K.B. to parents on Sunday and when K.B. woke up screaming on Monday morning, my analysis and conclusion would remain the same. As discussed *infra*, I would likewise conclude that Parents rebutted the presumption as K.B. was in the care of Babysitter # 1, and later Paternal Grandmother, and Parents had no reason to fear K.B. being taken care of by either caretaker. Nevertheless, Parents do not challenge the narrowed timeframe, and therefore I do not address this further.

that "Paternal Grandmother stays overnight on Sundays and sleeps on the same floor of the home as the twins." Majority at 6 n.5. Respectfully, I disagree with the Majority's characterization of Paternal Grandmother's role during the relevant period and its conclusion that Mother and Father failed to rebut the presumption.

Like every Sunday evening, Paternal Grandmother took over childcare duties for K.B. and A.B. beginning at 8:00 p.m. from Babysitter #1. N.T., 12/16/2019, at 23. On this particular Sunday, when Parents returned home at approximately 10:10 p.m., Paternal Grandmother was caring for K.B. and A.B. and Babysitter #2 was caring for C.B. and Y.C. Also present were Babysitter #2's daughter and Babysitter #1, who had remained at the home until Mother and Father returned home so they could pay her. Babysitter #1 left at approximately 10:20 p.m., Parents went to bed around 10:30 p.m. on the fourth floor, and Babysitter #2 left between 10:30 p.m. and 11:00 p.m. *Id.* at 26. Paternal Grandmother slept on the second floor and was the primary and direct caregiver for K.B. and A.B. overnight. *Id.* at 22-23, 35-36, 62. According to Mother, K.B. and A.B. generally wake up to feed at night, and Paternal Grandmother is responsible for caring for K.B. and A.B. overnight between Sundays and Mondays. *Id.* at 49. According to Parents, they did not see K.B. again until Monday morning, when it was apparent to them that he needed medical attention. They promptly took him to the

hospital where the family had received medical care, and which was across the street from his pediatrician. *Id.* at 27-29, 58, 72-73.

Thus, the uncontroverted evidence presented during the joint child abuse and dependency hearing on December 16, 2019, established that K.B. was not in Mother and Father's care during the critical time period. Additionally, Mother and Father testified that they had no reason to doubt the care provided by Paternal Grandmother, Babysitter #1, or Babysitter #2 prior to K.B.'s injury. *Id.* at 33, 71. Therefore, Mother and Father presented testimony "that they gave responsibility for the child to another person about whom they had no reason to fear[,]" thereby rebutting the presumption. *L.V.*, 127 A.3d at 837 (citation omitted). Accordingly, the trial court erred when it concluded that Mother and Father failed to rebut the presumption, and when it found that Mother and Father were perpetrators of child abuse based upon an application of the presumption. *N.B.-A.*, 224 A.3d at 668. Insofar as the trial court concluded that Mother and Father abused K.B. pursuant to 23 Pa.C.S. § 6303(b.1), without application of the presumption, this was error because DHS failed to establish by clear and convincing evidence that Mother and Father consciously disregarded a substantial and unjustifiable risk that K.B. would be abused by an act or failure to act. Accordingly, I would reverse the finding of child abuse against Mother and Father.

In so doing, I do not discount the severe injuries that K.B. suffered, or the clear and convincing evidence that someone abused this Child. I do not, however, believe that the record before me supports a finding that Mother and Father should be held responsible for this abuse. As our Supreme Court has explained,

> [a]lthough the tragic crime of sexual [or physical] abuse of a child may occur when a child is without proper parental supervision or care, it may also occur **despite** a parent's best efforts to care for and supervise a child. Sadly, children are vulnerable to abuse when they are at day-care or in school; when they are involved in church, athletic, or other activities; and even when they are under the supervision of trusted friends or family. Yet, parents cannot be with their children every minute of every day, and the vast majority of children engage in the aforementioned activities without incident. Applying the [subs]ection 6381(d) presumption to cases such as the one before us, where DHS presented no evidence that Mother was or should have been aware that Stepbrother posed a risk to Child, or that he or anyone else was abusing Child, would essentially allow a parent to be deemed a perpetrator of child abuse by omission in every case where a child is abused, placing the burden on the parent to prove that they had no reason to believe that their child was at risk.

***N.B.-A.***, 224 A.3d at 675 (emphasis in original).

Finally, because the Majority concluded that the trial court did not err in finding Mother and Father to be the perpetrators of child abuse against K.B., it found Mother and Father's challenges to the adjudication of dependency for the Children and removal of K.B. and A.B. moot. ***See*** Majority at 27. Because I would conclude that the trial court erred in finding Mother and Father to be perpetrators of abuse, I would not dismiss these challenges as moot and would instead review them on the merits.

- 9 -