J-S40032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.M., FATHER | : | No. 2042 EDA 2022 |

Appeal from the Order Entered July 21, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000081-2021

BEFORE:  PANELLA, P.J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 16, 2022**

Appellant, T.M. ("Father"), appeals from the order entered in the Philadelphia County Court of Common Pleas, which adjudicated S.M. ("Child"), born in March 2020, dependent, and entered a finding of abuse against Father and S.G. ("Mother").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On January 17, 2021, police responded to a report of a domestic disturbance in the house of Father and Mother.  During their investigation, police observed injuries on S.M.'s face and took her to the Children's Hospital of Philadelphia ("CHOP") for examination.  At the hospital, the emergency department team

_____

[1] Mother has not appealed either the adjudication of dependency or the order entering a finding of abuse.  Father did not appeal the adjudication of dependency.

observed bruising and marks on S.M.'s face and in the whites of her eyes that were inconsistent with Father and Mother's report that S.M. received her injuries after falling off the bed earlier that morning. S.M. was referred for a child abuse consultation, which was conducted by Dr. Anish Raj from CHOP's child protection team. After his evaluation, Dr. Raj opined that a single fall from the bed did not line up with the observed injuries.

On January 26, 2021, the Philadelphia Department of Human Services ("DHS") obtained an Order of Protective Custody for Child, and she was placed in foster care. After a shelter care hearing on January 27, 2021, the court found that it would not be in S.M.'s best interest to return to either parent's care. The court granted parents weekly supervised visits with Child.

On February 8, 2021, DHS filed a petition for dependency alleging that Child was a dependent child under the Juvenile Act,[2] and that she was a victim of child abuse pursuant to the Child Protective Services Law.[3] The trial court conducted hearings on DHS's petition on September 23, 2021, March 16, 2022, and July 21, 2022.

At the first hearing, DHS presented the expert testimony of Dr. Raj. Dr. Raj explained that when he evaluated Child at the hospital, he observed notable bruising on the left side of Child's face including on her left cheek, her

_____

[2] 42 Pa.C.S.A. § 6302.

[3] 23 Pa.C.S.A. § 6301-6387.

chin, and the left side of her neck. Dr. Raj also observed subconjunctival hemorrhages—burst blood vessels—on the whites of Child's left eye. He explained that he could not quantify the level of pain suffered by Child but explained that her facial injuries would likely have caused her to "cry, which can be a communication of pain or discomfort." (N.T. Hearing, 9/23/21, at 38). Dr. Raj testified that the additional tests and screenings for possible injuries came back normal.

Dr. Raj opined that a single fall from a bed did not line up with the distribution of Child's bruising on multiple planes of her face. (*Id.* at 40). He explained:

> [T]he rationale for that was, again, when we think about a simple household fall, we would expect bruising or injuries… on one area where the impact would be. The impact site. We would not expect…the extension.
>
> You wouldn't expect it to extend down to the neck, up into the eye, and over to the chin. That…wrapping motion would not be consistent with a simple fall.

(*Id.* at 32-33). Ultimately, Dr. Raj opined that Child's injuries were the result of a non-accidental or inflicted trauma. (*Id.* at 32).

On the second day of hearings, March 16, 2022, DHS introduced testimony of Corporal William Young of the Tinicum Township Police Department. Corporal Young testified that he responded to a report of domestic assault at the house. Soon after he arrived, Mother showed up at the house and claimed that she had been assaulted by Father. Mother showed no signs of assault, and Corporal Young explained that there was no probable

cause for arrest. Mother became very emotional and upset and stated to Corporal Young that "the baby had been assaulted." (N.T. Hearing, 3/16/22, at 13). Corporal Young then looked at Child and noticed marks and swelling on her face and a hemorrhage in her left eye.

Corporal Young explained that when he asked about Child's injuries, Father said Child had fallen off the bed sometime that morning. Corporal Young asked to see the bed from which Child fell. Corporal Young testified that the bed off of which Child allegedly fell was basically a mattress that was on the floor, so the height of the fall would have been "the thickness of the mattress…maybe 10-12 inches." (*Id.* at 14).

Next, Chief James Simkins testified about his interview of Father and Mother a couple days after the incident. He explained that Mother refused to provide a written statement. Mother also recanted her earlier assertion that Father had struck the child and maintained that child fell from the bed. (*Id.* at 38-39). Chief Simkins took a written statement from Father, in which Father explained that he was home downstairs and heard the child "screaming like crying really loudly. He went upstairs, found the child on the bed and that [Mother] had told him that the child had fallen off the bed." (*Id.* at 40).

DHS also called Karen Kilson from the Delaware County Children and Youth Services ("DCCYS"). Ms. Kilson testified that she interviewed Father and Mother about Child's injuries. Father told her that Child fell off the bed. (*Id.* at 64-65). Mother initially told her that Father had assaulted Child, then

later told her that Child had fallen from the bed. (*Id.* at 62).

Finally, DHS called Robyn Crosby, the Community Umbrella Agency ("CUA") case manager.[4] Ms. Crosby went to CHOP to see Child and testified that she "observed what appeared to look like a handprint on her face." (*Id.* at 72). Ms. Crosby explained that she spoke with Father who stated that he was in the basement and heard a loud thump noise as if someone fell off the bed, heard Child crying, then ran upstairs, and noticed that Child was crying and her "face was turning red, so he called rescue squad." (*Id.* at 74).

On the final day of hearing, on July 21, 2022, Father testified that on January 17, 2021, he was in the basement of his home while Mother and Child were upstairs on the second floor. He testified that he "heard a loud thump, like, 'thump waah.' The baby started crying…real loud." (N.T. Hearing 7/21/22, at 27). Father then stated he ran upstairs and took the child. Father explained that he was able to calm Child down within a couple of minutes and that he did not observe any bruising or injuries on Child. (*Id.* at 28-30). Father explained that he was surprised that Child needed to be taken to the hospital for her injuries. (*Id.* at 48). Father denied striking Mother or Child and suggested to the court that Mother caused Child's injuries and tried to cover it up. (*Id.* at 49).

Following the parties' closing arguments, the trial court adjudicated

---

[4] CUA became involved with the family shortly after Child's birth when Mother tested positive for marijuana.

Child dependent and entered a finding of child abuse against both Father and

Mother. In setting forth its findings, the court explained:

> So, to be clear, [DHS] is not seeking a finding of child abuse as to [M]other and [F]ather under the normal standards. They are seeking the finding under…23 Pa.C.S. [6381(d)]…
>
>       *   *   *
>
> …that is the presumption of child abuse. So let's start with— let me be clear. That is a rebuttable presumption. This is not an easy case to decide, but let's start with the testimony from Dr. Raj…from CHOP. And he was a pediatrician that saw [Child] when she went to CHOP.
>
> All counsel stipulated at the hearing, November 23, [20]21, that he was an expert in pediatrics. There was no stipulation as to him being an expert in child abuse. Nonetheless, this [c]ourt qualified Dr. Raj as an expert in child abuse, based on both the cross-examination of him and redirect by [DHS].
>
> What leads this [c]ourt to believe that there was, in fact, child abuse is the testimony of Dr. Raj, most specifically that, with the physical exam that was done, there was bruising of [Child] on the left side of her neck, red spots in her left eye, and bruising on her chin.
>
> While the CT scans were negative, while the results for bleeding and clotting disorder were negative, while the subsequent skeletal survey was negative, the doctor also testified that the injuries and bruising in multiple planes of the face were not consistent with a fall off the bed.
>
> Father reported that the bed was…the floor was hardwood and there were no items on the floor. And Dr. Raj further went on to explain that the bruising for [Child] was down her chin and up to her eye, and the red marks in her eye whites were actually burst blood vessels.
>
> That is what made him indicate that, to reasonable degree of medical certainty, this was child abuse, and he labeled it child abuse because it was concerning for trauma. Specifically, the injuries would not be normal for a child her

- 6 -

age in a fall off the bed, from the height of this particular bed, a mattress on the floor, so, not necessarily considered a bed. That height was not sufficient for the level of injury she sustained.

…Police Officer William Young and Detective James Simpkins also confirmed that the mattress was on the floor. So, only 12 to 18 inches, I believe, was the height that they gave, from the top of the bed to the bottom—to the floor, where she reportedly fell.

On cross-examination, Dr. Raj reiterated that a fall from the bed was not consistent with the multiple planes of injuries, and he explained that it's a fact that there's bruising on her cheek, but then on her chin, and also the red dots in her eye. Dr. Raj also, on cross-examination by counsel for [M]other, indicated that they had considered other causes of injury, but the only thing they could come up with was non-accidental.

He did concede that there was no impairment caused to the [C]hild, but he could not qualify the pain level because [Child], at that time, was only nine months old, and unable to speak.

(N.T. Hearing, 7/21/22, at 65-68). Finding that the presumption of child abuse under Section 6381 of the CPSL applied, the court then considered whether Mother and Father had presented sufficient evidence to rebut the presumption of child abuse. The court continued:

…Mother, having presented no evidence to rebut the presumption of child abuse, will be found to be a perpetrator of child abuse as to [Child].

The testimony of Detective Simpkins in particular, I believe, when he and Police Officer Young went back out to the home of [F]ather, where [M]other was still residing at that time, was that [M]other changed her story from what she had initially told the police when they arrived at 10:30 in the evening…

…Detective Simpkins…testified that, in listening to the call log [from Mother calling the police], there was no information given that a child was injured.

The information given, and why the police officers were initially dispatched to the home, was because [M]other said she had been hit by [F]ather. Coupled with Dr. Raj – Anish Raj's testimony that a fall from the bed is not consistent with the injuries that [Child] received, as well as [Mother] not presenting any evidence to rebut anything, I…can only find that she's a perpetrator of child abuse.

Now, then I have to turn my attention to whether or not [F]ather's explanation of what occurred that day is sufficient for him to have rebutted the presumption of child abuse as to [Child]. I have been on the fence about whether or not the explanation [F]ather offered was sufficient to rebut the presumption, and to be—had [F]ather not changed his story—and I say changed his story in that, when he testified today, he testified to hearing a thump and a loud cry.

I don't find credible that, from the basement, he could hear a thump on a floor two levels above. I would have found it credible that he heard a loud cry down in the basement. I probably would have still been on the fence as to whether— but that would have—I think, depending how loud the child was crying.

But the story both Police Officer Young and Detective Simpkins testified to, and the written statement that [F]ather provided, as they testified, was that he heard a loud cry while he was in the basement, moving furniture, and then went upstairs. That subtle difference is what's concerning for me.

So, based on that, I am going to apply the presumption of child abuse to [F]ather…as well, having already determined that child abuse did, in fact, occur. That being said, I am still going to order that DHS make reasonable efforts to reunify. At this point, it looks like [F]ather is the reunification resource.

(*Id.* at 68-71). Thus, at the conclusion of the hearing, the court adjudicated

- 8 -

Child dependent and made a finding of abuse as to both Father and Mother. Father filed a timely notice of appeal and statement of errors complained of on appeal on August 14, 2022.

Father presents the following issues for our review:

I. Whether the trial court erred and/or abused its discretion by making a finding of child abuse under the [CPSL] inasmuch as this finding was not supported by the record and testimony proffered.

II. Whether the trial court erred and abused its discretion by finding child abuse as to [Father] whereas DHS failed to prove by clear and convincing evidence that the injury to the Child was the result of child abuse rather than accidental injury.

(Father's Brief at 3).

We review this appeal for an abuse of discretion. *In the Int. of L.Z.*, 631 Pa. 343, 360, 111 A.3d 1164, 1174 (2015). "The standard of review in dependency cases 'requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the [trial] court's inferences or conclusions of law.'" *Id.* (quoting *In re R.J.T.*, 608 Pa. 9, 26, 9 A.3d 1179, 1190 (2010)).

In his first issue, Father claims the trial court erred when it entered a finding of abuse by Father. Father argues that the court's finding of abuse based on Child's having suffered a bodily injury was not supported by the record. Father insists that the record does not show that there was any

impairment of Child's physical condition or that she suffered substantial pain. (Father's Brief at 14-15). We disagree.

"Although dependency proceedings are governed by the Juvenile Act (42 Pa.C.S.A. §§ 6301-[63]75), the [CPSL] controls determinations regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence." *In the Int. of L.V.*, 209 A.3d 399, 417 (Pa.Super. 2019) (citation and internal quotation marks omitted). Section 6303 of the CPSL defines child abuse as "intentionally, knowingly or recklessly…[c]ausing bodily injury to a child through any recent act or failure to act." 23 Pa.C.S.A. § 6303(b.1)(1). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S.A. § 6303(a).

> [T]he requisite standard of proof for a finding of child abuse pursuant to Section 6303(b.1) of the CPSL is clear and convincing evidence. *In re L.Z.*[*, supra* at 360, 111 A.3d at 1174] ("a petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations, 42 Pa.C.S.[A.] § 6341(c)"). Clear and convincing evidence is "evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *G.V. v. Dep't of Pub. Welfare*, 625 Pa. 280, [288,] 91 A.3d 667, 672 (2014).

*In the Int. of N.B.-A.*, ___ Pa. ___, 224 A.3d 661 (2020).

Instantly, the trial court made its finding of abuse under the presumption of abuse standard as set forth in Section 6381 of the CPSL. "Section 6381(d) of the CPSL,…establishes a rebuttable, evidentiary presumption when a child sustains abuse not ordinarily suffered absent acts

- 10 -

or omissions of a parent or other responsible party.[5]   Under such circumstances, the fact of abuse suffices to establish *prima facie* evidence of abuse by the parent or person responsible." ***In the Int. of C.B.***, 264 A.3d 761, 771 (Pa.Super. 2021) (*en banc*), *appeal denied*, ___ Pa. ___, 270 A.3d 1098 (2022) (citations and internal quotation marks omitted).  "*Prima facie* evidence is not the standard that establishes the child has been abused, which must be established by clear and convincing evidence; it is the standard by which the court determines whom the abuser would be in a given case." ***Int. of J.R.W.***, 631 A.2d 1019, 1024 (Pa.Super. 1993).

Here, the trial court found that Child suffered bodily injury as required for a finding of child abuse based on the testimony of Dr. Raj, an expert in child abuse.  At the hearing, Dr. Raj conceded that Child had not sustained any impairment of physical condition.   He did, however, note bruising on Child's left cheek, bruising on her chin, bruising on the lateral aspect of her neck, and "evidence of subconjunctival hemorrhages, which is…burst blood

---

[5] Section 6381 of the CPSL provides, in part:

> **(d) *Prima facie* evidence of abuse.**—Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S.A. § 6381(d).

vessels…on the whites of the [left] eye." (N.T. Hearing, 9/23/21, at 28-29).

Dr. Raj explained that facial injuries, like the ones Child suffered, would be

expected to cause infants to cry "which can be a communication of pain or

discomfort." (**Id.** at 38). Ultimately, given the distribution of bruises and

injuries on multiple planes of Child's face, Dr. Raj opined that Child's injuries

were the result of non-accidental or inflicted trauma. (**Id.** at 46-47).

Upon review, we conclude that clear and convincing evidence supports

the trial court's finding that Child was a victim of abuse. **See In re N.B.-A.,**

**supra** at 668. Specifically, the record supports the court's finding that Child

suffered bodily injury as defined under the CPSL because of the substantial

pain she experienced as a result of the injuries to her face. **See** 23 Pa.C.S.A.

§ 6303(a), (b.1)(1). Father's first issue merits no relief.

In his second issue, Father argues the trial court erred in entering its

finding of child abuse, where the court based its decision on Father allegedly

having changed his story. Father claims that any injury Child sustained was

the result of an accident, and not abuse. Specifically, Father contends that he

was in the basement when Child fell off the bed and he heard her cry, at which

point he ran up to the third floor. Father insists that he never changed his

story and that the court erred when it made a finding of abuse. (Father's Brief

at 17-19). We disagree.

A finding of child abuse requires that the court find both that the alleged

abuse occurred, and that the person accused perpetrated the abuse. **See In**

*re L.Z., supra*.   Here, as discussed above, the trial court found that abuse occurred based on Child's having sustained multiple injuries to her face, which Dr. Raj opined were the result of non-accidental injury or trauma, and would have caused Child pain.   Regarding whether Father was the person who perpetrated the abuse, our Supreme Court has explained the presumption of abuse, and the potential for rebuttal of that presumption as follows:

> [T]he Legislature balanced the presumption of Section 6381(d) by making it rebuttable as it merely establishes "*prima facie* evidence" that the parent perpetrated the abuse. 23 Pa.C.S. § 6381(d). … Accordingly, evidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

*In re L.Z., supra* at 379, 111 A.3d at 1185 (footnote omitted).

Section 6381(d) specifically "extends to both acts and omissions of the parent or responsible person…[and] encompasses situations where the parent or responsible person is not present at the time of the injury but is nonetheless responsible due to his or her failure to provide protection for the child." *Id.* at 377, 111 A.3d at 1184.

- 13 -

Here, after the court found that DHS had introduced clear and convincing evidence to prove that Child had been abused, Section 6381(d)'s presumption of abuse applied, and the burden shifted to Child's parents to rebut the presumption that they had perpetrated the abuse. The court explained that "Father's changed storyline made him noncredible and therefore unable to overcome the presumption that he was a perpetrator of the child abuse that occurred while Child was in his care and custody." (Order, 9/13/22, at 1).

We cannot say the court abused its discretion under these circumstances. *See In re L.Z., supra* at 360, 111 A.3d at 1174 (explaining that standard of review in dependency cases requires appellate court to accept findings of fact and credibility determinations of trial court). Because the court found that Father's testimony was not credible, Father was unable to rebut the presumption that he was a perpetrator of abuse in this case. Therefore, Father's second issue merits no relief. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2022